FRED CHRISTENSEN, APPELLEE, v. ROBERT J. TATE, APPELLANT.

FILED NOVEMBER 16, 1910. No. 16,178.

1. Evidence: ADMISSIBILITY: CITY ORDINANCES. City ordinances published in book form are not competent in evidence unless "purporting to be published by authority of the city." If the evidence shows that it is the revised ordinances of the city, and the book when offered is stated by counsel to show that it was published by the city council, and this statement is not challenged, the general objection that it is "incompetent, irrelevant, immaterial, and no foundation laid, and not in issue" will not be held sufficient to call the attention of the court to the question whether it purports to be published by authority.

2. Municipal Corporations: USE OF STREETS: AUTOMOBILES: REGULATION BY ORDINANCE. The law gives cities of the second class control of their streets, and an ordinance regulating the speed of motor vehicles in the streets will not be held void as in conflict with the statute on that subject, unless it appears that the limitation of speed is such as to prohibit the free use of the streets by such vehicles.

3. Instructions must be considered and construed together. If they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission. And, unless this is done, the judgment will not ordinarily be reversed for such defects.

4. Trial: NEGLIGENCE: INSTRUCTIONS. When the jury in one instruction is told that, in order to find for the plaintiff, they must first find that the damages complained of were caused by defendant's negligence, a subsequent instruction that, if they find for the plaintiff, the plaintiff would be entitled to recover the dam-

Christensen v. Tate.

age he has sustained by reason of the negligence of defendant, is not erroneous as assuming that the defendant was negligent.

5. **New Trial**: NEWLY DISCOVERED EVIDENCE: DILIGENCE. A motion for a new trial on the ground of newly discovered evidence is properly overruled when the evidence submitted on the motion fails to show due diligence in endeavoring to produce such evidence upon the trial.

6. **Appeal**: REVIEW. It is found upon examination of the record that the evidence is sufficient to support the verdict and judgment.

APPEAL from the district court for Dodge county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*E. C. Strode, D. C. Burnett, Maxwell V. Bechtol* and *Courtright & Sidner,* for appellant.

*F. W. Button, contra.*

SEDGWICK, J.

Defendant was driving his automobile along one of the streets of Fremont, leading from the city at a point where the road turns at a right angle, and within the limits of the city he met the plaintiff, who was driving a horse with a single buggy. Plaintiff's horse became frightened and ran for some distance, overturning the buggy and throwing the plaintiff to the ground. The plaintiff suffered personal injuries and the horse and buggy were both damaged. Plaintiff recovered a judgment for his damages in the district court for Dodge county, and the defendant has appealed.

1. It is contended that the court erred in admitting in evidence the ordinance of the city of Fremont regulating the speed of automobiles upon the streets of the city. The objection to these ordinances as evidence is twofold. It is contended that no sufficient foundation was laid for their admission. The clerk of the city testified that the ordinances were published in book form, and that the book shown him was "the last revised ordinances of the city of Fremont"; that the ordinance appearing in that

57

publication in regard to the speed of automobiles had not been subsequently repealed or modified in any way. The plaintiff then offered in evidence two sections from the book in question, relating to the speed of automobiles, and stated in the offer that the same was published in book form by order of the city council and "published by authority of the city of Fremont, Nebraska." The offer was objected to "for the reason that it was incompetent, irrelevant, immaterial, and no foundation laid, and not in issue." The objection now is that there was no foundation laid for the introduction of these sections in evidence because it does not appear from this record that the book purported to be published by the authority of the city. The statute provides that the ordinances, "when printed or published in book or pamphlet form and purporting to be published by authority of the city, shall be read and received in evidence in all courts and places without further proof." Comp. St. 1909, ch. 13, art. III, sec. 46. In *Union P. R. Co. v. Ruzicka*, 65 Neb. 621, the specific objection was made that "there is no proof as to the validity or authority of the pretended ordinance." This circumstance is particularly mentioned in the opinion, and the conclusion that the admission of the ordinance in evidence required a reversal is expressly put upon that ground. There was no testimony in that case that the book offered was "the last revised ordinances of the city." If this book did not purport to be published by authority of the city it would of course not be competent as proof of the ordinances that it contained, but we think that under the circumstances of this case and the condition of the record, as above recited, the objection, "no foundation laid," should have been made more specific. It had been twice stated in open court that these ordinances were published by the city council, and that statement should have been directly challenged in order to avail the defendant of this objection.

It is also contended that these sections of the ordinance were void because in conflict with the statute. In 1905

the legislature enacted a law "requiring registration of motor vehicles and regulating their use or operation upon the highways or streets." Laws 1905, ch. 129. This law required owners of motor vehicles to obtain licenses from the secretary of state and made general provision in regard thereto. By section 8 of the act a speed limit was provided. The section contained the general provision that, "no person shall operate a motor vehicle on a public highway at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the highway, or so as to endanger the life or limb of any person." It then provided specifically that "in the closer built-up portion of a city, town or village" such vehicle should not be operated at a greater rate of speed than one mile in 6 minutes, and in other portions of a city, town or village the speed should not be greater than one mile in 4 minutes, and outside of a city, town or village the speed should not be "at a greater average rate than twenty (20) miles per hour," and by section 11 of the act it was provided that "cities and towns shall have no power to pass, enforce or maintain any ordinance, rule or regulation * * * or exclude or prohibit any motor vehicle whose owner has complied with section two (2) or section four (4) of this act from the free use of such highways, and all such ordinances, rules or regulations now in force, are hereby declared to be of no validity or effect." Laws 1905, ch. 129. This chapter was substantially re-enacted in 1907, making some verbal changes in various sections, but not in matters above referred to, except that the word "average" was omitted from the limitation of speed outside of cities, towns and villages. Laws 1907, ch. 115. The ordinance in question was enacted in January, 1907, and provided that no automobile should be driven in the streets of Fremont at a greater rate of speed than 8 miles an hour, and that in turning a corner of any street or avenue, or crossing the intersection of any street or avenue, or in any alley of the city, the speed should not be greater than 4 miles an hour. It is insisted that the provision of the

statute that cities and towns shall not prohibit motor vehicles whose owner has complied with the statute from the free use of the streets is violated by this ordinance; that "when automobiles first came into use the prejudice and fear was greater than it is now, because of lack of knowledge on the subject. The people did not then know, as they do now, that an auto traveling at the same speed as a team and buggy can be stopped in one-fourth to one-tenth of the distance that a team can. Hence a great fear went up, and ordinances were passed in many towns and cities limiting the rate of speed to a pace so slow as to be ridiculous to one understanding the situation. * * *; that there are not over a half dozen cars in Fremont, and these of the newest model, which can run as slow as four miles an hour without use of the slow-speed mechanism of the car. The large majority, and all ordinary cars here, cannot go below six or eight miles an hour without the use of the slow-speed machinery. When this machinery is in use, the wheels go slow, but the machinery goes very fast. * * * In many cars, in this condition, while the car is moving very slow, the revolutions to some of the mechanism is between 2,000 and 3,000 a minute, or several times as fast as when the high speed gearing is in use, and the car traveling much faster. The effect of the use of the slow-speed gearing is not only to wear out and shake to pieces, but it does also what the auto people call 'burn up.' * * * Our blocks are 280 feet, and most of them have 16-foot alleys. Just imagine running 132 feet high gear, 16 feet low gear, 132 feet high gear, 80 feet low gear, and so on. With the number of autos we have now, the low-gear rattle-bang would drive people crazy, and we would find our city fathers passing an ordinance to abate the noise nuisance."

There is, however, no evidence in the record to which these suggestions are applicable. It is not shown that such regulations in effect prohibit the free use by such conveyances of the streets of the city. The city is by statute given general control of its streets. Of course,

this control of the streets is subject to the general laws of the state, and must not be so exercised as to violate those laws. The fact that the legislature has provided limitations upon the speed of such vehicles will not prevent further restriction by the city if the same are reasonable and are made necessary by special conditions and circumstances that were plainly not considered by the legislature, and do not prohibit or restrict the free use of the streets.

We cannot say that the court erred in admitting these ordinances in evidence.

2. Instruction No. 6, given by the court, is complained of. It is as follows: "If the jury believe from the evidence that the defendant met the plaintiff, as alleged in his petition, and defendant was at said time operating his automobile, and plaintiff at said time was exercising due care, and that by reason of the negligence of the defendant at the time in operating and running said automobile the plaintiff suffered injuries to himself, his buggy and his horse, then the defendant in this case would be liable for such damages as you may believe from the evidence plaintiff has sustained. If, on the other hand, the jury do not believe from the evidence that said injuries suffered by plaintiff, if any, to himself, his buggy, and his horse were caused by the negligence of the defendant, then in that case the plaintiff cannot recover, and your verdict should be for the defendant." The objection urged against this instruction is that it does not set out "the circumstances from which negligence may or may not be imputed," nor furnish any guide "by which the jury may know what is and what is not negligence." The instruction, if given alone, would no doubt be subject to criticism. At the defendant's request the jury were told that the plaintiff could not recover if "the defendant had his automobile under reasonable control and was running it at a reasonable rate of speed and in a reasonable manner, and * * * used ordinary care to prevent injury," and no doubt, if the defendant had requested it, the court would

have given an instruction defining affirmatively what constitutes negligence as well as the instruction stating negatively what is not negligence.

3. In the seventh instruction the court told the jury: "If you find for the plaintiff in this action, the plaintiff would be entitled to recover the damage he has sustained by reason of the negligence of the defendant;" then follows a statement of the elements of damage, and it is complained that in this language the court assumed that the defendant was guilty of negligence and that this was prejudicial. It is argued that "the manner in which the instruction was worded implies that the only question in the case is whether or not the plaintiff is to have damages," and assumes the real question as to whether the defendant was negligent. The jury had already been told that one of the material matters which they were to consider was whether the alleged injuries and damage of the plaintiff were caused by the negligence of the defendant, and that the plaintiff must prove that they were so caused or he could not recover, and so the jury could not find for the plaintiff without finding that the defendant was negligent, as alleged. It was therefore not prejudicial to instruct them that if they found for the plaintiff they should inquire what damage was caused by the defendant's negligence. Unless they first found that the defendant's negligence was the cause of the accident, they could not find for the plaintiff. While the instruction is not as comprehensive and definite as might be wished, we think that, in the absence of any proper request by the defendant for further instruction, the giving of this instruction was not erroneous.

4. A supplemental motion for new trial was filed on the ground of newly discovered evidence. Those parts of this proposed evidence that would seem to be of sufficient importance to be considered in this connection are such as would ordinarily be discovered and used upon the trial. The showing of diligence in this regard is not sufficient to justify the court in granting another trial.

5. It is also contended that the evidence is not sufficient to sustain the verdict and judgment. The evidence as to negligence on the part of defendant is not very satisfactory. The plaintiff testified that the defendant was driving his machine at about 18 or 20 miles an hour. He called three witnesses who saw the accident, and asked one of them: "What rate of speed would you say Mr. Tate was. going?" And he answered: "I don't know what rate he was going, but he was going there and the accident happened." Another of these witnesses who saw the accident was asked: "How was the automobile running?" And he answered: "It was going along at a pretty good rate of speed. I don't know how fast, as I am no judge of speed. * * * I would not say it was going fast or slow." The third apparently disinterested witness was not asked as to the speed of the machine. The defendant testified that he first saw the plaintiff just as he, the plaintiff, turned the corner west onto Washington avenue, and that he, the defendant, was just turning the corner on the west side and just coming around a billboard that stood there. He then noticed that the horse "looked up as though he was going to be frightened," and he turned out into the ditch and gave the plaintiff the full road and stopped his machine; that he went clear down off from the grade to give the plaintiff the full road. The plaintiff positively denies that the defendant stopped his car at all. It was fully shown by many witnesses that at the place of the meeting in question 10 or 12 miles an hour would be a highly dangerous rate of speed. In view of the fact that the defendant was a witness in his own behalf and did not testify as to the rate of speed he was driving when he met the plaintiff, we cannot say that the finding of the jury is unsupported by the evidence.

The judgment of the district court is

AFFIRMED.