PAULINE A. PATRICK, APPELLANT, v. THE UNION CENTRAL
LIFE INSURANCE COMPANY, A CORPORATION, APPELLEE.

33 N. W. 2d 537

Filed August 10, 1948.   No. 32425.

*Blackledge & Sidner,* for appellant.

*Hamer, Tye & Worlock,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Appellant, Pauline A. Patrick, commenced this action in the district court for Buffalo County against the appellee, The Union Central Life Insurance Company, a corporation. The purpose of the action is to recover on an insurance policy issued by the appellee on the life of Gomer C. Patrick. The basis of appellant's claim is that the insured is dead because of the legal presumption of his death arising by reason of his continued and unexplained absence since shortly after October 2, 1938, which was more than seven years prior to the commencement of this action. Issues were joined and trial had to a jury.

After all the evidence had been adduced the appellee moved for a directed verdict. This motion was overruled and the cause submitted to the jury. The jury returned a verdict for the appellant. Thereupon appellee, in accordance with section 25-1315.02, R. S. Supp., 1947, which was then in force, moved to set aside the verdict of the jury and for judgment in its favor in accordance with its motion for a directed verdict. At the same time it filed a motion for new trial. Appellee's motion for judgment notwithstanding the verdict was sustained, its motion for new trial overruled, and ap-

pellant's cause of action was dismissed. Thereupon appellant filed her motion for new trial. It is from the overruling thereof that she appeals.

Under section 25-1315.02, R. S. Supp., 1947, when a request for a directed verdict is made at the close of all the evidence, and it is overruled, the party against whom such ruling is made may, if a verdict is rendered against him, file a motion to have the verdict set aside and judgment entered in accordance with his request for a directed verdict. If such motion is filed within the time as provided in said statute, then the district court has authority to enter judgment in accordance therewith. Upon appeal from an order sustaining such motion this court, under section 25-1315.03, R. S. Supp., 1947, may direct judgment to be entered in favor of the party entitled thereto.

The principle here involved, and which has long been adopted by this court, has been recently stated in Banks v. Metropolitan Life Ins. Co., 142 Neb. 823, 8 N. W. 2d 185, as follows: "A presumption of death arises from the continued and unexplained absence of a person from his home or place of residence for seven years, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him." See Holdrege v. Livingston, 79 Neb. 238, 112 N. W. 341.

The effective date of the presumption is at the end of the seven years. It is based on two facts: Namely, that the absence of the person from his home or place of residence for seven years, where nothing has been heard from or concerning him during that time by those who, were he living, would naturally hear from him, must be both continuous and unexplained. If the evidence relating thereto is undisputed and fully establishes these facts, then the presumption arises therefrom as a matter of law in favor of the party so contending and he is entitled to the benefit of such presumption.

Of course, the presumption is rebuttable by showing

that the facts do not actually exist from which the presumption arises. If either or both are in dispute then the question of whether or not they have been established is one of fact for the jury and should be so submitted. If the jury finds that they are established then, of course, the same situation arises and the party in whose favor the finding is made is entitled to the benefit of the presumption as a matter of law.

In an annotation in 95 A. L. R. at page 880, it is stated: "The rule which is approved by most text-writers and the majority of the courts which have discussed the subject is thus stated by Professor Wigmore: 'The peculiar effect of a presumption "of law" (that is, a real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule. * * *.' Wigmore, Ev. 2d ed. § 2491."

And it is further stated in the annotation in 95 A. L. R. at page 892:

"The facts or circumstances which are the basis of a 'presumption' or inference of fact are, of course, evidence to be considered by the jury. In such cases it is not the presumption or inference that the jury consider, as such; they merely consider the facts, and draw the inference therefrom.

" 'Although the presumption as such disappears from the case when substantial countervailing evidence is produced, the facts and circumstances which give rise to it remain and afford the basis for a like inference by the trier, whether court or jury.' O'Dea v. Amodeo (1934) 118 Conn. 58, 170 A. 486."

This principle is discussed in Tyrrell v. Prudential Ins. Co. of America, 109 Vt. 6, 192 A. 184, 115 A. L. R. 392, as follows: "A disputable presumption is a rule

of law to be laid down by the court, which shifts to the party against whom it operates the burden of evidence, merely. It points out the party on whom lies the duty of going forward with evidence on the fact presumed. And when that party has produced evidence fairly and reasonably tending to show that the real fact is not as presumed, the office of the presumption is performed, and the fact in question is to be established by evidence as are other questions of fact, without aid from the presumption, which has become functus officio. To translate this statement into the language of this Court, all such presumptions are locative, merely. A presumption, of itself alone, contributes no evidence and has no probative quality. It takes the place of evidence, temporarily, at least, but if and when enough rebutting evidence is admitted to make a question for the jury on the fact involved, the presumption disappears and goes for naught. In such a case, the presumption does not have to be overcome by evidence; once it is confronted by evidence of the character referred to, it immediately quits the arena."

Appellant's evidence establishes that she and the insured were natives of Kentucky and married there; that they subsequently, in 1909, came to Nebraska; that she has lived here ever since and that the insured lived here until October 2, 1938; that they moved to Kearney about 1924 and have made that their home ever since; that the family consisted of themselves and one son who, at the time insured disappeared, was married and living with his family in McCook, Nebraska; and that the family relations were pleasant.

It further shows that on Sunday morning, October 2, 1938, insured was going south of Kearney and appellant was going with him; that his business, at that time, was the buying and selling of livestock and that he used a truck for that purpose; that about 11 or 11:30 a. m. on that day, while appellant was preparing a lunch to take along, he left the house to go downtown

to have the truck serviced; that he took no luggage, toilet accessories, or clothes with him other than the clothes he had on his person; and that he did not return to the home.

The evidence further shows that the next appellant heard from him was about two weeks later when she received a letter postmarked Plattsmouth, Nebraska. In this letter he enclosed a money order in the amount of $75 and directed appellant to apply it on the indebtedness which he had against the truck. Later it was discovered that he had sold the truck in Omaha. Although appellant made diligent search and inquiry among their relatives, friends, and others likely to know about him and in places where he was likely to go, to ascertain his whereabouts, she and her family have never again heard from or about him.

However, in appellant's testimony, particularly her cross-examination, it appears that the insured had gotten into some serious difficulty in January 1938 when he issued insufficient fund checks to parties from whom he bought cattle. He left Kearney at that time and was gone two or three months and was finally brought back by the authorities. All but one of these checks had been taken care of by October 2, 1938, and apparently no action was ever taken on any of them. However, this trouble seems to have hurt his pride and his business for after he returned he appears to have been embarrassed by what happened and to have done very little business. He asked appellant to go with him to some other place to start life over again. This she did not want to do until things were straightened up and she asked him to stay and do that. Appellee introduced some evidence to the same effect.

This evidence raised an issue of fact as to whether or not his absence from his home for seven years was unexplained and that question is, of course, for the jury.

As stated in Shaw v. Prudential Ins. Co., 158 Wash. 43, 290 P. 694: "In other words, and more accurately

speaking, such evidence is an attack upon the very foundation upon which the presumption rests, rather than upon the presumption itself. If the evidence be sufficient to explain the absence to the satisfaction of the jury, then the absence is no longer unexplained and the presumption no longer obtains, because its fundamental basis has been removed. But in all cases of this kind, the question is necessarily for the jury, because the facts and circumstances are of such a nature as to call for the drawing of inferences; and one might draw the inference that the absentee, for sufficient reason, absented himself and willfully refused to communicate with his family, friends and associates, while another might conclude that the circumstances shown were insufficient to account for so long an absence and abstinence from communication with family and friends, and that death alone would fairly account for the absence." See, also, Maxwell v. Maxwell, 106 Neb. 689, 184 N. W. 227; Banks v. Metropolitan Life Ins. Co., *supra;* Tyrrell v. Prudential Ins. Co. of America, *supra;* Magness v. Modern Woodmen of America, 146 Iowa 1, 123 N. W. 169; and Rosencrans v. Modern Woodmen of America, 97 Neb. 568, 150 N. W. 630.

Appellee further put in issue the question of the insured's continued absence by the evidence of the witness Henry Norgaard of Minden, Nebraska. Norgaard testified by deposition that in 1937 he became acquainted with a man by the name of Patrick who lived in Kearney; that during the years of 1937 and 1938 he saw him at various times; and that the Patrick he knew had a pick-up truck and was engaged in the business of buying and selling cattle. Norgaard stated he did not know any of the other members of the Patrick family, nor does it appear that they knew him.

Norgaard further testified that after he got out of the service on October 17, 1945, at Jefferson Barracks, St. Louis, Missouri, he went to Santa Barbara, California, to get his wife. His wife had been living with her folks

in Santa Barbara during the time Norgaard was in the service. When Norgaard and his wife left Santa Barbara they went through Los Angeles, California. While in Los Angeles on either the 1st or 2nd of November, 1945, he went to the Greyhound Bus Depot to get his baggage and there he met Patrick, who was working there handling baggage. He testified he spoke to the party he so recognized and asked him if he wasn't Patrick from around Minden and that the party he spoke to said he was and that he kind of remembered him (Norgaard) but did not remember his name. Norgaard testified he then talked with Patrick, that Patrick asked about Martin Jorgensen and Jim Bang of Minden who lived there at the time he knew Patrick. He testified it was the same Patrick he knew at Minden and who he identified as the same person appearing on two snapshots. These snapshots were admitted to be of Gomer C. Patrick, the insured. No direct evidence was offered to rebut Norgaard's testimony except such as would naturally flow from the facts and circumstances shown in the record to which appellant was entitled.

This is no claim based upon, nor does the evidence establish, facts from which the actual death of Gomer C. Patrick could be found. The opinion concerns itself with the sufficiency of the evidence to authorize a finding by the jury that the facts, from which the presumption of death arises as a matter of law, have been established.

We recognize that there are jurisdictions wherein it is held that the legal presumption is completely overcome by positive, uncontradicted, and unimpeached evidence that the person is in fact alive and that in such the party relying on the presumption is not entitled to prevail thereon. As stated in Columbia Life Ins. Co. v. Perry's Adm'x, 252 Ky. 793, 68 S. W. 2d 393: "* * * the testimony of these three witnesses completely overcame and destroyed all evidence upon which to base a presumption of the death of insured." And in National Life & Accident Ins. Co. v. Hankerson, 49 Ga. App. 350, 175

S. E. 590, as follows: "The alleged death of the insured at the end of the seven-year period of absence thus resting only upon the presumption of law, it was entirely rebutted by direct, positive, and uncontradicted evidence." See, also, Heath v. Salisbury Home Telephone Co., Mo. App., 27 S. W. 2d 31.

We think that the effect of this evidence is but to leave a conflict between that which is circumstantial and that which is direct and that appellant was entitled to have the weight of the facts and circumstances arising out of the circumstantial evidence, as against the direct parol evidence in opposition thereto, submitted to the jury.

Triers of fact have the right to test the credibility of witnesses and to weigh their undisputed parol testimony against the facts and circumstances in evidence from which a conclusion may properly be drawn that the witness was mistaken. See Teresi v. Filley, 146 Neb. 797, 21 N. W. 2d 699, and authorities therein cited.

In a similar situation the Michigan court in Samberg v. Knights of the Modern Maccabees, 158 Mich. 568, 123 N. W. 25, 133 Am. S. R. 396, stated as follows: " 'There is no evidence that directly contradicts the evidence of the witness Frank E. Bowen to the effect that he was acquainted with Charles A. Samberg, and that he saw him, recognized him, and talked with him September 28 or 29, 1908. If you believe that either Bowen or the witness Paul saw Mr. Samberg in 1908, then that ends the case, and your verdict must be for the defendant. The evidence of Bowen can be overcome only upon the finding by you that he was either mistaken in his identification of Samberg, or that he is falsifying. I shall leave it for you to determine whether he did see and know Samberg as he claims. This is to be considered by you in connection with all the other proofs of the plaintiff and defendant in the case respecting the disappearance, absence, and all other matters that will enable you to determine whether Mr. Samberg was seen alive in Petoskey in 1908, as claimed. As I have explained, if

the defendant has shown by proof that Mr. Samberg was alive in 1908, then your verdict should be for the defendant.' This is as favorable a charge as to the law upon that feature of the case as the defendant is entitled to."

Although not exactly authority for the reason that the action was brought more than seven years after Beadle testified he knew and talked with the insured at Winnemucca, Nevada, in October of 1904, nevertheless, we think the following statement in the case of Rosencrans v. Modern Woodmen of America, *supra,* with reference to his testimony is correct and applicable here: "It was for the jury to say whether they believed the testimony of the witness Beadle. If they did not believe his evidence (and they may have felt bound to question it) there was nothing to prevent the application of the usual rule which would enable the jury to consider the presumption of the assured's death a fact after the expiration of seven years."

While the case of Thomas v. Thomas, 19 Neb. 81, 27 N. W. 84, involved testimony of witnesses who had seen Samuel Price within the seven-year period, however, the opinion is not based solely on that fact but upon the insufficiency of the facts generally, including that of the defendant, who was seeking the benefit of the presumption of death. We find it in no way conflicts with the holdings in this opinion.

Having come to the conclusion that the evidence presented an issue of fact for the jury, we find it was proper to submit it and consequently appellee's motion for a judgment notwithstanding the verdict should have been overruled. We therefore come to the question presented by appellee's cross-appeal. The cross-appeal relates to the overruling of its motion for a new trial.

It is of course true, as appellee contends, that it is the duty of the trial court to instruct the jury on all issues raised by the pleadings which find support in the evidence.

The court's instructions properly submitted the issues in accordance with the instructions approved in Banks v. Metropolitan Life Ins. Co., *supra*. In addition thereto the court instructed as follows: "You are instructed that if you should find from the evidence in this case that the Gomer C. Patrick, whose death is alleged by the plaintiff, was seen by the witness Henry Norgaard in Los Angeles, California, on or about the 1st or 2nd day of November, 1945, then the presumption of the death of the said Gomer C. Patrick, if such has been established by the evidence herein, is rebutted, and your verdict should be for the defendant." We think this instruction fully protected the appellee on the issue presented by Norgaard's testimony.

From an examination of the instructions as a whole, we find the case was properly submitted to the jury and judgment should have been entered on the verdict it returned. The judgment is reversed and the cause remanded with directions to enter a judgment on the verdict.

REVERSED AND REMANDED WITH DIRECTIONS.

MESSMORE, J., participating on briefs.