BARKALOW BROS. COMPANY, A CORPORATION, APPELLEE, V. JACK J. ENGLISH, APPELLANT, IMPLEADED WITH MICHAEL A. ENGLISH, APPELLEE.
BARKALOW BROS. COMPANY, A CORPORATION, APPELLANT, V. JACK J. ENGLISH ET AL., APPELLEES.

67 N. W. 2d 336

Filed December 10, 1954. Nos. 33537, 33538.

*Van Pelt, Marti & O'Gara* and *Warren K. Dalton,* for appellant Barkalow Bros. Company.

*Joseph J. Cariotto,* for appellee Jack J. English.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This litigation concerns a claim of Barkalow Bros. Company against Jack J. English for the purchase price of merchandise allegedly sold and delivered by the former to the latter by virtue of a written contract of the parties, and a claim of Jack J. English that he was not indebted to Barkalow Bros. Company for any amount on any account but that it was indebted to him for wages earned while he was employed by it as a salesman. The trial of the dispute resulted in a verdict and judgment for Jack J. English against Barkalow Bros. Company. Its motion for new trial was denied as to its claim as pleaded in its petition and it was sustained as to the matters presented by the counterclaim of Jack J. English. His appeal from the part of the ruling on the motion for new trial adverse to him is case No. 33537. The appeal of Barkalow Bros. Company from the part of the ruling on the motion adverse to it is case No. 33538. The cases were consolidated for hearing and determination in this court. The contesting parties are Barkalow Bros. Co., hereinafter called appellant, and Jack J. English, designated as appellee. Michael A. English, the surety on a bond given to appellant to guarantee the performance by appellee of his obligations because of the contract between him and appellant, was a defendant in the district court, but he did not appeal and has not appeared in either case in this court.

The cause of action alleged by appellant is: That it is a domestic corporation; that on or about July 17, 1950, it and appellee made a written contract, a copy of which was made a part of the petition; that on or about that date appellee and Michael A. English executed a bond for the benefit of appellant, named therein as obligee, to protect and save it harmless from any loss occasioned

by or resulting from the contract, and a copy of the bond was made a part of the petition; that appellee became and was indebted to appellant for an amount stated; and that demand of payment had been made of appellee and Michael A. English but no part thereof had been paid to appellant.

An answer was filed by appellee 1 year and 7 days after appellant filed its petition in which appellee admitted the execution of the contract made a part of the petition, and he alleged that he obtained goods from appellant, sold large quantities of said goods, returned all unsold goods to appellant, and turned over to it all cash and checks received from customers; that appellant made calculation of the accounts and from time to time paid to appellee what it represented was due him as his share of the transactions; that the payments received by appellee from appellant were an average of about $50 a week; and that the payments so made and received were an agreed settlement of all sums owing to and receivable "by both parties in full of account." Appellee denied other matters alleged in the petition.

The contents of the pleading of appellee, except the admission of the execution of the contract, were denied by appellant.

Appellee more than 7 months after he made answer to the petition filed a pleading designated cross-petition in which it is asserted: He "incorporates herein by reference the allegations of his answer." When he was employed by appellant he was told he would receive in excess of $100 a week as his pay. He relied upon this representation and "went to work for said plaintiff." Shortly thereafter appellee "asked for his said earnings" but appellant refused to honor his demand. Before January 11 appellee offered to quit if he could not collect his wages and appellant told him to stay on the job "because he would get his said wages paid to him" and appellee continued to work for appellant until about January 11, 1951. Appellee used his automobile at the

request of appellant in its business for 60 days, traveled an average of 150 miles each day, and that a fair and reasonable charge therefor was 6 cents a mile. Appellee prayed for the amount he claimed was due him from appellant.

It was stipulated at the trial that it should be considered that appellant had denied the statements of the last pleading of appellee.

The contract between appellant and appellee is dated July 17, 1950. It provides that appellee in his relations with appellant should be an independent contractor; that appellant would sell and deliver to appellee merchandise of the character described for prices determined as mentioned in the agreement to be paid by appellee as specifically set forth in the writing; that appellee knew the territorial limits of the franchise lines of appellant, would respect them, and take no action or make any sale that would infringe upon any territory not franchised to appellant by the manufacturer; that appellee would offer for sale the merchandise sold him by appellant to customers at the places specifically named in the contract; that appellee would devote his entire time to punctual and regular calls on the customers in that territory; and that the contract could be terminated by either party by giving to the other 30 days' notice in writing of the election to end it. The bond has the same date as the contract. It describes appellee as an independent route salesman and it guarantees the payment of all money due appellant, the obligee named therein, from appellee, to make good any losses sustained by appellant on account of the operations of appellee as such independent route salesman, and to save and keep harmless and indemnify appellant from any loss, costs, or expenses arising therefrom. The contract and bond were each executed, delivered, and made fully effective on or about the date exhibited by them.

Appellee talked with the Lincoln manager of appellant before he entered into any arrangement with it.

He had not had experience in this kind of engagement. The manager described the territory that was open, the number of trips required to make the territory, and the facts generally important to such an undertaking. He explained something of the volume of sales made by and profit of the last route salesman in the territory. Appellee claimed the manager said that appellee "* * * should earn at least $100.00 a week. That's what the man previously had been earning on that territory." Appellee was told in that conversation he would have to sign a contract and furnish a bond "for the merchandise and money I was to turn in." A copy of the form of contract and of the bond required were given to appellee. He took them with him, and read them fully and carefully. He said he became fully conversant with the contract. He took the contract and bond to his lawyer to be examined. His counsel suggested some changes in the contract. These were indicated on the form by the lawyer. The lawyer talked on the telephone concerning these with the Lincoln manager of appellant. Appellee took the form of contract back and gave it to the manager. The contract was completed, the changes offered by counsel for appellee were made, and the contract and bond were each executed, unconditionally delivered, and made fully effective. The parties thereto operated under the contract from July 17 to December 23, 1950.

Appellee seeks to avoid the clear terms and obvious effect of his written contract by pleading and attempting to establish that in his first negotiations with appellant he was told that he would receive "in excess of $100.00 per week as his pay"; that he relied upon "said representations"; and that thereafter he sometimes inquired when he was to be paid. Appellee offered his version of conversations. The first was during the initial negotiations. He testified the Lincoln manager during their talk said that "* * * I should earn at least $100.00 a week. That's what the man previously had been earning on that territory." That was before the written contract was made.

Later at a time not made definite or approximate appellee said he asked when he would start receiving "this $100.00 a week" and the answer of the manager was for appellee "to continue on, and it will work out and level itself off after a period of time." During another conversation appellee claims he complained he was not making enough money and he said the manager told him "* * * 'Well, you just hang on. We'll get it straightened out, and then we'll find another man to take over.'" Appellee claims similar statements were made to him at frequent intervals.

Appellee related that he was advised by appellant the most convenient and expeditious manner of approaching and canvassing the territory in which he was intending to offer merchandise for sale, and the names of dealers who had purchased the character of merchandise appellee would have to offer. Appellant furnished a man who was familiar with the territory and who had been a route salesman to accompany appellee on his first trips in the territory. Information of calls to the office of appellant from dealers in the territory concerning merchandise wanted by them were noted and the memorandum of them were given to appellee when he returned to the office from his territory. He testified that he was requested by the Lincoln manager of appellant to make delivery of requested merchandise to customers and that he did so on various occasions; that each of these deliveries required a special trip after his usual working hours; and that he at the suggestion of the manager attended and sold merchandise at a church bazaar at David City during one day.

It is contended by appellee that the conversations and things mentioned in the foregoing were sufficient to sustain a finding that he was an employee of appellant; that his relationship with appellant was not that of an independent contractor; and that his agreed compensation was $100 a week. The execution of the contract and its delivery in the sense it was to be effective with-

out condition or qualification is established. The contract or its meaning has not been assailed on any ground. There was no attempt to reform, rescind, or modify it. There were no negotiations concerning another agreement to supersede the written contract. It must be accepted and enforced as written. The contract contains nothing to support the claim that appellee was an employee of appellant for a fixed compensation. Appellant did not hire the time and efforts of appellee. It obligated itself to sell appellee merchandise upon certain terms and conditions. Appellee understood the contract and correctly stated in his testimony the only way he could profit from it. He read and discussed the contract with his counsel. He knew its contents. He testified that he did not find any provision in the contract for the payment of any amount by appellant to him and because of this he "couldn't see why the contract was necessary"; and that the only way he could make money under the provisions of the contract was for him to sell the merchandise he bought from appellant.

It has long been the law of this state that if persons to a transaction have put their engagement in writing in such terms as import a legal obligation without uncertainty of the object or extent of the engagement, it is conclusively presumed that the entire engagement of the parties and the extent and manner of their undertaking have been reduced to writing, and any parol agreement is merged in the written contract and testimony of prior or contemporaneous conversations is incompetent. In Securities Acceptance Corp. v. Blake, 157 Neb. 848, 62 N. W. 2d 132, it is said: "In the absence of fraud, mistake, or ambiguity a written agreement is not only the best evidence but the only competent evidence as to what was the contract of the parties."

The claim of appellee for compensation for the use of his automobile by him in the business of appellant is not supported by the record. The obligation of appellee to furnish transportation to permit him to perform his

contract is clear. He rented a truck from appellant for a fixed amount of more than $65 a month. Appellee was obligated for repairs, replacements, and everything required to keep the truck in proper operating condition at his expense. It was damaged while being operated by him and thereby rendered unfit for use. If appellant defaulted in any way in the performance of the lease of its truck to appellee, a fact the record does not show, his remedy was damages for the breach, and the measure thereof would not be the reasonable charge for the use of an automobile for the time and in the manner appellee says he used his vehicle.

It was alleged by appellee in his answer more than a year after the petition of appellant was filed in the litigation that for a valuable consideration and by agreement of the parties a settlement in full was made of all sums owing to or receivable by the parties now contesting in this case. He not only declared this by allegation but swore to it positively as a fact. Several months later he again presumedly advisedly asserted it as a part of his cross-petition. He continued to maintain by his pleadings upon which the case was tried that this was a fact to and during the trial and as long as the case was pending in the district court. He made no effort to change his position in reference to this or to claim or offer to show any reason why he should change it. These allegations are entirely inconsistent and in irreconcilable conflict with the other matters set forth in his cross-petition. Appellant was entitled at all times as against appellee to the advantage of the allegations that there had been a full and complete settlement, satisfaction, and discharge of any indebtedness of appellant to appellee. This was a complete defense to the claims made by the cross-petition. The syllabus of Bonacci v. Cerra, 134 Neb. 476, 279 N. W. 173, asserts: "A party may at any and all times invoke the language of his opponent's pleading, on which a case is being tried, on a particular issue, as rendering certain facts in-

disputable; and in doing this he is neither required nor allowed to offer such pleading in evidence in the ordinary manner." The statement in the opinion upon which the quoted headnote is based is a quotation from 2 Wigmore, Evidence (2d ed.), § 1064, p. 536: "The pleadings in a cause are, for the purposes of use in that suit, not mere ordinary admissions, * * * but judicial admissions * * * i. e., they are not a means of evidence, but a waiver of all controversy (so far as the opponent may desire to take advantage of them) and therefore a limitation of the issues. Neither party may dispute beyond these limits. Thus, any reference that may be made to them, where the one party desires to avail himself of the other's pleading, is not a process of using evidence, but an invocation of the right to confine the issues and to insist on treating as established the facts admitted in the pleadings. * * * This much being generally conceded, it follows that a *party may* at any and all times *invoke the language of his opponent's pleading on that particular issue* as rendering certain facts *indisputable;* and that, in doing this, he is on the one hand neither required nor allowed to *offer the pleading in evidence* in the ordinary manner, nor on the other hand forbidden to comment in argument without having made a formal offer; for he is merely advocating a construction of the *infra*-judicial act of waiver of proof."

It is said in Kuhlman v. Farmers Union Co-Operative Assn., 152 Neb. 597, 42 N. W. 2d 182: "Where, in an action to recover a money judgment, the answer of the defendant admits the right of the plaintiff to judgment for any sum, the defendant cannot give evidence contradicting the admission of his answer, nor can the plaintiff introduce the answer in evidence; and it is the duty of the court, regardless of an adverse verdict, to render judgment for the plaintiff for that sum, without evidence." See, also, Barry v. Barry, 147 Neb. 1067, 26 N. W. 2d 1; In re Estate of McCleneghan, 145 Neb. 707,

17 N. W. 2d 923; Provident Savings & Loan Assn. v. Booth, 138 Neb. 424, 293 N. W. 293.

The fact that appellant denied the allegations of settlement made in the answer and cross-petition of appellee does not render inoperative this doctrine. In each of the last two cases on this subject decided by this court the allegations of the answer were denied by the plaintiff. In the first of the two cases the court said that the allegations in the answer had the effect of setting a limit upon the contentions of the pleader and establishing a point beyond which he could not go so far as the issues between the parties were concerned. The last of the two cases determined that defendant was concluded by his answer and notwithstanding the fact that the particular allegation in the answer was denied the issues were limited to conform to the admissions of defendant. Bonacci v. Cerra, *supra;* Kuhlman v. Farmers Union Co-Operative Assn., *supra.*

It is said by appellee that he should be given leave to amend his answer by removing from it the plea of settlement, discharge, and satisfaction of all claims of each of the parties against the other. The statutory authority to amend is limited to "* * * when the amendment does not change substantially the claim or defense * * *." § 25-852, R. R. S. 1943. The withdrawal of the part of the answer desired by appellee would substantially change the issues of the case. This court is reluctant to permit a party to amend his pleading when to do so would result in the reversal of a judgment. Pitman v. Henkens, 125 Neb. 621, 251 N. W. 282. The order granting a new trial of the matters presented in the cross-petition was based on the allegations of the answer which appellee would on leave withdraw. The refusal to grant a right of amendment in this case has no relation to a miscarriage of justice because as herein discussed and concluded the claims of the cross-petition are without proof adequate to sustain a verdict.

The recovery permitted appellee herein based upon

his cross-petition is without support of evidence and is contrary to law. Appellant produced substantial evidence that appellee was indebted to it in some amount. There is no material contradiction of the proof made by appellant. In fact appellee stated that appellant did all the bookkeeping and that he did not claim that he was entitled to any credit which he had not received on the amount appellant claimed was due from appellee. Specifically he testified "To my knowledge I have no credits coming to that amount." "That amount" referred to the sum appellant claimed. The verdict in this case is clearly wrong. The motion for a new trial should have been in all respects sustained.

The judgment should be and it is reversed and the cause is remanded to the district court for Lancaster County for further proceedings in harmony with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.