CHARLES J. STAHLHUT, APPELLANT, V. COUNTY OF SALINE,
APPELLEE.

125 N. W. 2d 520

Filed January 3, 1964.    No. 35479.

Chambers, Holland, Dudgeon & Hastings and Thomas J. Dredla, Jr., for appellant.

Steinacher & Vosoba and Stanley Bartos, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

Charles J. Stahlhut, plaintiff, brought this action at law in the district court for Saline County, against the County of Saline, defendant, to recover damages for personal injuries sustained by the plaintiff and damage to his automobile due to the negligence of the defendant in failing to properly maintain a bridge which collapsed while the plaintiff was driving over it. The case was tried to a jury, resulting in a verdict for the defendant on its counterclaim in the amount of $8,500. The plaintiff filed a motion for new trial or in the alternative a motion for judgment notwithstanding the verdict. This motion was overruled. The plaintiff appeals.

The County of Saline is a governmental subdivision of the State of Nebraska, charged by the laws of the State of Nebraska with the construction and maintenance of certain county roads within its boundaries. The accident herein involved occurred on or about January 1, 1961, upon a bridge and roadway which the County of Saline constructed and erected and was liable to maintain and keep in repair. This bridge was located at a point approximately 200 feet west of the corporate limits of the city of Crete, for the use and convenience of automobiles and other traffic using the county road crossing the bridge. It is admitted that the bridge fell or collapsed about January 1, 1961.

So far as necessary to consider on this appeal, the pleadings reflect the following: The plaintiff alleged

in his amended petition that the proximate cause of the plaintiff's damages was the negligence and carelessness of the defendant County of Saline in the care and maintenance of the bridge which it was required to maintain, in that the defendant negligently permitted all of the struts of the bridge to become rusted, worn, and weakened; in that the defendant failed to repair the struts of the bridge when it knew, or should have known, that such struts were rusted and worn out to the point where the bridge would not carry ordinary traffic; and in continuing to maintain the bridge when the defendant knew, or should have known, that the entire structure of the bridge had become old, obsolete, deteriorated, and rusted and therefore unfit for use by modern traffic.

The defendant, in answer to the plaintiff's amended petition, alleged that the collapse of the bridge and whatever damage, if any, resulted therefrom was occasioned solely by the plaintiff's own negligence and without any fault or negligence on the part of the defendant or its employees. The defendant, for counterclaim against the plaintiff, alleged that on or about January 1, 1961, at about 12:30 a.m., the plaintiff went upon the bridge from the west, proceeding east, in his automobile; that he operated the same while on the bridge in a careless and negligent manner; and that he permitted the automobile to strike the truss uprights, railing, and lower chord of the bridge on the north side thereof with such force as to cause the bridge to collapse and fall into the river below, pulling with it a part of the west and east abutments and approaches thereto. The specific acts of negligence on the part of the plaintiff in the operation of his automobile which constituted the sole proximate cause of the collapse of the bridge and the resulting damages, were alleged as follows: That the plaintiff failed to have his automobile under proper and reasonable control; failed to maintain a proper lookout; failed to keep his automobile on the right side of the bridge; operated his automobile at a speed greater

than was reasonable and prudent under the conditions then existing; and operated his automobile carelessly and recklessly and drove it with such force and speed against the north side of the bridge as to cause the superstructure of the bridge to weaken and the entire bridge, except the approaches thereto, to collapse. It was further alleged that the part of the bridge struck by the plaintiff's automobile was about the center of the lower chord, truss, and railing; and that due to the carelessness and negligence of the plaintiff as above set forth the bridge became worthless and unfit for travel so that it would have to be wholly rebuilt by the defendant at great cost and expense. The defendant prayed for judgment against the plaintiff for damages.

The plaintiff's reply to the defendant's answer to the plaintiff's amended petition and to the counterclaim of the defendant was a general denial of new matter contained therein.

The plaintiff filed an answer to the counterclaim of the defendant wherein the plaintiff specifically denied any negligence on his part in the operation of his automobile; and alleged that the bridge had become worthless and unfit for travel, had no value whatever, and was actually a hazard to the traveling public.

The plaintiff assigns as error that in view of the amount of the verdict based upon comparative negligence of the parties and upon instruction No. 14, the verdict reflected that the jury had to have found the defendant guilty of more than slight negligence; that the court erred in giving instruction No. 14 in that the instruction did not limit the negligence of the plaintiff to that charged by the defendant and counterclaimant in the pleadings, and authorized a recovery for negligence generally; and that the instruction was further erroneous in that it allowed a recovery by the defendant and counterclaimant for the reasonable cost of replacing the bridge with one of like kind and quality with no mention

of a deduction for what had been recovered by way of salvage.

The plaintiff testified that he lived in Crete, was 41 years old, and worked in his father's drugstore; and that at about 12:30 a.m., January 1, 1961, he had an accident while he was driving his automobile in an easterly direction at a point approximately 200 feet outside the city limits of Crete and at a point where a bridge, owned and maintained by the defendant, crosses the Blue River. When he arrived at the bridge, there was no traffic coming toward him. He went onto the bridge at an approximate rate of speed of 35 to 40 miles an hour. The roads were dry and the floor of the bridge was dry. As he started across the bridge, his first sensation was a weightless feeling, and he felt like his "stomach went up in the air a little bit." The next thing he remembered he was trying to crawl out of the debris. He was out of his automobile, but did not know what had happened to it. The bridge had collapsed, and he believed that he was down below on some of the planks of the bridge. He could feel blood on his face. He did not know where his automobile was. He heard people calling, and he started to walk. He found his automobile had crossed the bridge. Up to the time he experienced the "up and down" feeling in his stomach, his automobile had not struck the bridge. He further testified that he believed his car must have struck something.

On cross-examination the plaintiff testified that he was familiar with the bridge and had crossed it at times for 31 years; that he never made any complaint about the bridge; that at about 12:10 or 12:15 a.m., January 1, 1961, he went across the bridge to the west going to Tuxedo Park; that the bridge had been closed but was opened the afternoon of December 31, 1960; that he did not know what happened; that the right rear fender of his automobile had been mashed in a little bit; and that the center part of the front end of his automobile was

bent in a "V" shape, like it had struck something.

An engineer who qualified as an expert relating to designing, constructing, and inspecting bridges testified that on the day following the accident, at the request of an attorney, he went to the scene of the accident and inspected the bridge to determine the cause of its collapse. He visited the scene of the accident on January 6 and 7, 1961, spending a good portion of the 2 days in making his investigation. Certain exhibits, being pictures of the scene of the accident, were received in evidence. This witness testified in detail about these exhibits. This witness testified that the deterioration of the steel portions of the structure which he examined disclosed that the entire bridge was deteriorated insofar as the steel work was concerned, and pointed out the various portions which were deteriorated and rusted as shown by the exhibits. He gave as his opinion that the bridge collapsed without any vehicle contacting it, and that the collapse would have to have been caused by a failure of some member of the bridge caused by either the weight of the vehicle coming onto the bridge or the element of time and deterioration of the steel; and that in his opinion the lifespan of the bridge was up, and that it failed at that particular time. On cross-examination this witness testified that from an examination of certain pieces of the bridge, he believed that such pieces could have come in contact with an automobile.

The county surveyor, called as a witness for the plaintiff, testified that his duties had to do with the maintenance and inspection of the county bridges; that he inspected the bridge here involved in the latter part of 1960; and that he gave the orders on what maintenance the bridges needed. In December 1960, he thought a new floor should be put on the bridge in question. He made an inspection of the condition of the structure, and while the bridge was not new, it was a pretty fair structure at the time he inspected it, however there was some

evidence of deterioration in the steel structure of the bridge.

A witness for the defendant testified that he knew the location of the bridge; that he had crossed the bridge regularly for the first 40 years of his life, and the last 4 or 5 years had crossed it at least twice a month; and that he had noticed no defect in the bridge while passing over it the afternoon of December 31, 1960.

A state trooper testified that his area of operation included parts of Lancaster, Gage, and Saline Counties; that he received a call at 1:03 a.m., January 1, 1961, over the radio, reporting an accident; and that he proceeded to the scene of the accident, arriving there about 1:30 or 1:45 a.m. He noticed a trail of antifreeze from the automobile back 269 feet to the intact edge of the bridge, plus a distance on the collapsed part of the bridge. He examined the automobile which showed that the front center of it was pushed back like it had struck something. There was rust on the hood, chrome, grille, and bumper of the automobile. He had crossed the bridge proceeding west about 10:30 p.m., on December 31, 1960.

The sheriff of Saline County testified that he received a call the morning of January 1, 1961, and went immediately to the scene of the accident; and that the bridge was down in the river. He identified pieces of the plaintiff's automobile rammed into the bridge railing and paint from the plaintiff's automobile on a bent piece of bridge railing.

The county commissioners who testified stated that no complaint had ever been made to them about the bridge.

The county surveyor, who is also the bridge foreman for the county, testified for the defendant that he was involved in the construction of new bridges and culverts and the inspection of bridges in the county to ascertain the general condition and need of repairs of the bridges; and that the bridge in question was a high-truss bridge.

In inspecting steel bridges of the type involved, he looked for missing bolts, rusted or bad parts of the bridge, and also to see whether or not the piling was in good condition. He also looked for deterioration of any parts of the bridge. He had inspected this bridge several times, and examined it once or twice a year. The bridge had been repaired several times. He further testified that the cost of replacing the whole bridge would be around $17,000; that salvage plank and scrap iron from the bridge was sold for $500; and that the defendant had recovered planks from the bridge which he estimated to be of the value of $1,646, and iron of the value of $684.80. On cross-examination he admitted that he was not a mechancial engineer, and the only training he had was actual experience working for the county, first as a helper and then as bridge foreman.

An expert engaged in the engineering field was called by the defendant and testified that he noted some deterioration of the bridge, but found the members to be basically sound. He gave as his opinion that an impact caused the bridge to collapse, and concluded that the car hit a specific part of the structure knocking it out and causing stresses and rupture of other parts. In his opinion the structure was in place when struck by the automobile, and the impact would have collapsed the bridge, no matter what its condition.

The plaintiff contends that the damages in this action are not in dispute; that the bridge foreman for the defendant testified that to replace the bridge would cost around $17,000; that the jury returned a verdict of $8,500; that it is undisputed that the defendant received salvage in the amount of $2,830.80, leaving the undisputed damage in the amount of $14,169.20; and that, therefore, it is evident that the jury must have found the defendant guilty of more than slight negligence which would bar recovery on the part of the defendant on its counterclaim.

The plaintiff cites Guerin v. Forburger, 161 Neb. 824,

74 N. W. 2d 870. In that case the executrix of the estate of James J. Guerin, deceased, brought the action to recover damages for herself as the widow of the decedent who was killed in an accident involving an automobile and a truck, also for decedent's burial expenses, and for damages to decedent's car. The funeral director fixed the expenses of decedent's burial at $830. The jury returned a verdict therefor in the amount of $456.50 or 55 percent of the amount. In support of the third cause of action it was stipulated by the parties that the reasonable value of the property damage to the decedent's car was $1,250. The jury returned a verdict on this cause of action for $687.50 or 55 percent. Thus it was self-evident that the jury reduced the amount of the plaintiff's recovery to the extent of 45 percent. This clearly indicated that the jury found decedent to have been guilty of more than slight negligence and in a degree sufficient to defeat any right of recovery therein.

Applying the reasoning of the above-cited case, the plaintiff states that the verdict of $8,500 in the instant case amounted to almost 60 percent of the undisputed damages which reflects that the jury must have found the defendant guilty of more than slight negligence and sufficient to bar recovery on the part of the defendant.

Although the case of Ireland v. Stalbaum, 162 Neb. 630, 77 N. W. 2d 155, is not exactly in point, it is however applicable to the instant case. It was stipulated that the manager of a motor company, if present, would testify that it would require the sum of $2,570.37 in labor and parts to restore the tractor involved to its condition as nearly as possible prior to the accident, and that the fair and reasonable cost of restoring the trailer to the same condition would amount to $349.07, making a total amount of $2,919.44. The parties did not stipulate that the amount was the cost of repairs, but only that the witness, if called, would so testify. The jury returned a verdict of $1,853.66. There was evidence of damage, other than that contained in the stipu-

lation, which consisted of photographs and testimony as to physical injury. The court said: "Under the rules stated the jury had the right to consider this evidence along with the evidence contained in the stipulation and in the light of all of it determine for itself the true amount of the plaintiff's damages.

"In this light the jury with perfect propriety and in valid performance of its function could have arrived at $1,853.66 as the true and full amount of the plaintiff's damage. If it did so, it performed its duty as that duty was outlined in the instructions. Again if it did so it must be said that the verdict was valid. * * *

"The correct rule to be applied in situations such as this is that a general verdict will not be vacated on the ground of irregularity if a construction is possible which will make it effective rather than void. It will be declared void only where it is so uncertain that it cannot be clearly ascertained what, if any, issues were passed upon by the jury. Abrams v. Lange, 158 Neb. 512, 63 N. W. 2d 781."

In the instant case the jury did not have to accept the bridge foreman's opinion. As a matter of fact, the bridge foreman testified that from his experience as a helper and subsequently a bridge foreman, he believed that to replace the bridge would cost around $17,000. In addition to the bridge foreman's testimony there was evidence, both direct and circumstantial, for the consideration of the jury. There was a model of the bridge; there were no less than 27 photographs relating to the bridge and its condition; there were three pieces of the bridge admitted into evidence; and two qualified engineers gave the jury the benefit of their descriptions of the bridge and its component parts and their functions. In addition, there was testimony of eyewitnesses as to the condition of the bridge before and after it collapsed.

In Klein v. Wilson, 167 Neb. 779, 94 N. W. 2d 672, this court said: "It was the duty of the jury to consider

and weigh all of the evidence and, with regard to testimony, to give it such weight as in its judgment it was entitled to receive. * * * The controlling principles are contained in the following stated rules:

" 'It is the province of the jury to harmonize the testimony in so far as that is possible, and in case of conflict to decide as to the weight to be given the testimony of the various witnesses.' Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168. * * *

" 'Triers of fact have the right to test the credibility of witnesses and to weigh their undisputed parol testimony against the facts and circumstances in evidence from which a conclusion may properly be drawn that the witness was mistaken.' Patrick v. Union Central Life Ins. Co., 150 Neb. 201, 33 N. W. 2d 537. * * *

"The jury had the right to cause the amount of the verdict to depend upon the application of either or both of these rules."

We conclude that the plaintiff's contention above raised cannot be sustained.

The plaintiff next contends that instruction No. 14 given by the trial court constituted prejudicial error. This instruction is as follows: "On the defendant's counterclaim, if you find by a preponderance of the evidence that the bridge collapsed by reason of the negligence of the plaintiff and further find that the said bridge was injured or damaged beyond repair, that is, that it could not be repaired and made as good as it was before it collapsed by replacing injured or damaged parts with new parts of like character, then you will find for the defendant on its counterclaim. The amount of its damages will be such a sum as you find from a preponderance of the evidence would be the reasonable cost of replacing said bridge with one of like kind and quality to take the place of the one injured or destroyed by such negligence.

"However, if you also find that the defendant was guilty of contributory negligence as defined in Instruc-

tion No. 10 then and in that event you will be governed by said Instruction No. 10 and reduce the amount of defendant's recovery accordingly."

The plaintiff's objection to the instruction is that it did not confine the defendant's right to recover for negligence alleged in the counterclaim of the defendant but permitted the jury to find for the defendant for negligence generally.

The plaintiff cited Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854, which holds: "An instruction which does not limit negligence to that charged in the plaintiff's pleading, but authorizes recovery for negligence generally, is objectionable." See, also, Ellis v. Union P. R. R. Co., 148 Neb. 515, 27 N. W. 2d 921; Norfolk Beet-Sugar Co. v. Hight, 56 Neb. 162, 76 N. W. 566; 38 Am. Jur., Negligence, § 370, p. 1090; 53 Am. Jur., Trial, § 574, p. 452.

The plaintiff further objects to instruction No. 14 for the reason that nowhere was the jury instructed to make any deduction for the salvage received by the defendant in the amount of $2,830.80 for portions of the bridge that collapsed.

The defendant asserts that instructions should be considered as a whole and if they fairly submit the case the instructions should be approved. Failure in an instruction on damages to refer to the allegations of negligence is not erroneous where other instructions properly set forth the allegations and elements of negligence, and further instruct the jury to consider the instructions as a whole.

In instruction No. 9, the court stated in part: "In order for the defendant to recover on its cross-petition the defendant must prove by a preponderance of the evidence the following necessary elements and allegations * * *." Then is set forth the specific allegations of negligence which are identical with the negligence charged in the defendant's counterclaim. The court stated further in instruction No. 9: "(2) That the negli-

gence of the plaintiff was the direct and proximate cause of the collapse of said bridge. (3) The amount of damages suffered by the defendant by the loss of said bridge."

The rule is stated in Bezdek v. Patrick, 164 Neb. 398, 82 N. W. 2d 583, as follows: "Instructions should be considered together in order that they may be properly understood, and when, as an entire charge, they properly submit the issues to the jury, the verdict will not be set aside. * * * If an examination of all the instructions given by the trial court discloses that they fairly and correctly state the law applicable under the evidence, error cannot be predicated thereon."

Instruction No. 9 given by the trial court required the jury to limit its consideration of the plaintiff's negligence to that alleged in the defendant's counterclaim. In considering the instructions as a whole, we do not believe that the jury was misled by the failure to include in instruction No. 14 the specific allegations of negligence pleaded by the defendant in its counterclaim. The following rule is applicable.

In Benedict v. Eppley Hotel Co., 161 Neb. 280, 73 N. W. 2d 228, this court said: "In determining whether or not there is error in a sentence or clause of an instruction it will be considered with the instruction of which it is a part and the other parts of the charge to the jury and the true meaning thereof will be deduced not from the sentence or phrase alone but by a consideration of all that it said on the subject. Instructions should be considered as a whole and if they fairly submit the case the instructions will be approved."

As to the plaintiff's objection to instruction No. 14, it appears to be that the instruction should have permitted the jury to deduct any salvage value from the amount found for the defendant.

The defendant's counterclaim contained the following language: "That due to the carelessness and negligence of the plaintiff as above set forth the said bridge became worthless and unfit for travel, so that it will

have to be wholly rebuilt by the defendant, Saline County at great cost and expense to said county."

The plaintiff's answer to the defendant's counterclaim specifically denied that there was any negligence on the part of the plaintiff in the operation of his automobile, and alleged that the bridge had become so worthless and unfit for traveling that it had no value whatever and was actually a hazard to the traveling public. There was no reply to the plaintiff's answer to the defendant's counterclaim.

In the case of Barkalow Bros. Co. v. English, 159 Neb. 407, 67 N. W. 2d 336, this court held: "The allegations of a pleading are always in evidence for all purposes of the trial. They are before the court and jury and may be used for any legitimate purpose." The court further said, quoting from 2 Wigmore, Evidence (2d ed.), § 1064, p. 536: " 'Thus, any reference that may be made to them (meaning the allegations), where the one party desires to avail himself of the other's pleading, is not a process of using evidence, but an invocation of the right to confine the issues and to insist on treating as established the facts admitted in the pleadings. * * * This much being generally conceded, it follows that a party may at any and all times invoke the language of his opponent's pleading on that particular issue as rendering certain facts indisputable; and that, in doing this, he is on the one hand neither required nor allowed to offer the pleading in evidence in the ordinary manner, nor on the other hand forbidden to comment in argument without having made a formal offer; for he is merely advocating a construction of the infra-judicial act of waiver of proof.' "

In Bonacci v. Cerra, 134 Neb. 476, 279 N. W. 173, the court quoted from 1 Phillips, Evidence (4th Am. ed.) 795, as follows: " 'In fact admissions in the pleadings cannot be either proved or disproved on the trial, but must be accepted for whatever they amount to in legal

effect, without reference to any other evidence that may be adduced.' "

Considering the state of the pleadings as to salvage value, it appears that such need not be made a part of the instruction for the reason that the affirmative pleadings of the parties to this action allege that the property destroyed had no value. While the instruction is not as comprehensive and definite as might be wished, we think in the absence of any proper request by the plaintiff for further instruction, the giving of this instruction was not prejudicially erroneous.

As stated in 88 C. J. S., Trial, § 393, p. 1073: "If a correct instruction, as far as it went, on the question of damages has been given, a party who desires a more complete charge should request it, * * *."

The requested instructions made by the plaintiff contained nothing relating to the measure of damages and nothing relating to the issue of salvage.

In Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612, this court said: "It may be conceded that the instruction of itself was not sufficiently explicit, but defendants made no request for any instruction upon the issue. In that connection, the rule is that: ' "A party desiring a more explicit instruction than that given should offer such an instruction." ' * * * As held in Christensen v. Tate, 87 Neb. 848, 128 N. W. 622: 'Instructions must be considered and construed together. If they are not sufficiently specific in some respects, it is the duty of counsel to offer requests for instructions that will supply the omission. And, unless this is done, the judgment will not ordinarily be reversed for such defects.' Likewise, in Edwards & Bradford Lumber Co. v. Lamb, 95 Neb. 263, 145 N. W. 703, this court held: 'Where an instruction is given to a jury, which it is claimed did not fully state the rule of law upon the subject involved therein, but did not misstate any rule to be applied, the attention of the court should be called to the omission, as claimed, by an instruction containing the alleged

omission. If not, there can be no ground for reversal therefor.' "

In the instant case it was agreed that the instructions be read to the jury prior to argument. The plaintiff had ample opportunity to offer a requested instruction which might or would have been more explicit had the plaintiff so desired. See Dorn v. Sturges, 157 Neb. 491, 59 N. W. 2d 751.

For the reasons given in this opinion, we conclude that the judgment of the trial court should be affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I dissent from the majority opinion herein for the reason that I believe instruction No. 14 given by the trial court was prejudicially erroneous. This instruction is set out in the majority opinion. I call specific attention to the only portion of that instrucion covering the amount of damage, which is the following: "The amount of its damages will be such a sum as you find from a preponderance of the evidence would be the reasonable cost of replacing said bridge with one of like kind and quality to take the place of one injured or destroyed by such negligence."

Defendant's bridge foreman, who was the only witness to testify to the extent of the damages to the bridge, injected the element of salvage into the case by testifying that the salvage recovered from the old bridge totalled $2,830.80. This evidence adduced by the defendant in its proof on the damages sustained under its counterclaim is undisputed in any way. It became an element to be considered in determining the extent of the damage sustained by the defendant on its counterclaim. The instruction clearly ignores the evidence on salvage, and under the instruction the jury would not be permitted to consider it. We must therefore assume that it was not considered by the jury in the verdict it returned for the defendant.

I would remand the cause to the district court with

directions to require the defendant, County of Saline, to remit the sum of $2,830.80 from its judgment within 30 days, otherwise to grant a new trial.

CARTER, J., joins in this dissent.