LILLIAN E. PADDACK, APPELLEE, v. WILLIAM R. PATRICK, APPELLANT.

79 N. W. 2d 701

Filed December 14, 1956. No. 34016.

356

*Fraser, Crofoot, Wenstrand, Stryker & Marshall* and *Robert G. Fraser*, for appellant.

*Rice & Adams* and *Schrempp & Lathrop*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Lillian E. Paddack brought this action in the district court for Sarpy County against William R. Patrick. She therein claims a car accident, in which she was involved while driving her car, was caused by negligence of the defendant in driving his car and resulted in damage to her car and injuries to her person for which she seeks to recover. A jury awarded her a verdict of $5,000 from which defendant appeals, his motion for a new trial having been overruled.

The first question raised by appellant is, was the evidence, as a matter of law, sufficient to sustain the verdict? The question of appellant's negligence, if any, and the contributory negligence of appellee, if any, and the effect thereof were the issues tried and submitted to the jury. In considering this question we review the evidence under the often-stated principle applicable when one of the parties has obtained a verdict. See Pospichal v. Wiley, *ante* p. 236, 79 N. W. 2d 275, for a full statement thereof.

The accident happened shortly after 5 p. m. on Thursday, June 2, 1955, when a car being driven by appellant ran into and against the side of a car being driven by appellee. It occurred in the southwest corner of the

intersection of Highway No. 131 and Avery Road, the intersection being in Sarpy County, Nebraska. Highway No. 131 is a state highway which runs almost due north and south, being level north of the intersection but sloping upgrade toward the south. It has a paved traveling surface about 22 feet wide with a line marked down the center to indicate two lanes for travel, one for travel in each direction. It is a through highway, being protected from intersecting roads by stop signs, there being one on the south side of Avery Road 24 feet west of the west edge of the paved surface of Highway No. 131. The maximum speed authorized on Highway No. 131 at this point was 45 miles an hour. Avery Road is a graveled county road, although not "a finished job," running east and west. Where it intersects Highway No. 131 the corners are rounded. At the northwest corner of the intersection is a frame building referred to by the witnesses as the Avery Bar. It sets back 29 feet from the west edge of the paved surface of Highway No. 131, thus leaving room for cars or trucks to park between it and the highway. At the time here involved a dump truck was parked in this area facing south and parallel with, but 4 or 5 feet west of the paved surface of Highway No. 131 with the front end some 35 to 40 feet north of the north edge of Avery Road. Both drivers were familiar with the intersection, the weather was good, there was plenty of light, they were each driving alone, the highway was dry, driving conditions were good, and, at the time, no other vehicles were approaching the intersection.

Appellee worked as a waitress for the Jack and Jill restaurant in the Hill Hotel in downtown Omaha. She lived in Bellevue with her family which consisted of her husband and a son 7 years old. At the time of the accident she had left her work and was driving a 1953 Chevrolet coach, which she owned jointly with her husband, south on the right side of Highway No. 131 toward her home. Appellant lives east and north of Avery

Station but has his office in Papillion. At the time of the accident he was driving his car, a 1953 Pontiac, from his office toward his home, intending to turn south on Highway No. 131 at the Avery intersection. As a result of the accident the left front fender, bumper, and headlight of appellant's car were damaged, and dirt and part of the headlight of his car lay on Highway No. 131 just in front of his car. His car came to a stop in the southwest corner of the intersection with its front wheels some 3 to 4 feet onto the paved surface thereof. After the collision appellee's car crossed Highway No. 131 and stopped just south of the southeast corner of the intersection astride the cement block of a culvert located there, with its front end down into a ditch. It had been damaged on the right side just back of the door. As a result of the impact appellee was thrown from her car. She was found under the back end thereof, where it had come to a stop, lying on a ridge of gravel located just to the east of the paved surface of Highway No. 131. This gives a general picture of the conditions and circumstances surrounding the accident. A more detailed discussion of the evidence relating to the conduct of both drivers leading up to and at the time of the impact will be set forth after we have announced the principles here applicable.

As stated in Spomer v. Allied Electric & Fixture Co., 120 Neb. 399, 232 N. W. 767, and approved in Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436:

" 'A driver of an automobile should have his car under such reasonable control as will enable him to avoid collision with other vehicles, assuming that the drivers thereof will exercise due care.' Thrapp v. Meyers, 114 Neb. 689; De Griselles v. Gans, 116 Neb. 835.

" 'Reasonable control' by drivers of motor vehicles is such as will enable them to avoid collision with other vehicles operated without negligence in streets or intersections, and with pedestrians in the exercise of due care; but 'complete control' such as will only prevent a colli-

sion by anticipation of negligence or illegal disregard of traffic regulations, in absence of notice, warning or knowledge, is not required by the laws of Nebraska."

As to appellant, who was approaching a through highway protected by a stop sign, section 39-724, R. R. S. 1943, provides in part: "All motor vehicles entering or crossing such state highways on which stop signs are erected shall come to a full stop as near the right of way line as possible, before driving onto such state highway, and, regardless of direction, shall give the right of way to vehicles upon said highway."

In regard thereto we have often held: "A driver of a motor vehicle about to enter a highway protected by stop signs must stop as directed, look in both directions, and permit all vehicles to pass which are at such a distance and traveling at such a speed that it would be imprudent to proceed into the intersection." Dorn v. Sturges, 157 Neb. 491, 59 N. W. 2d 751. See, also, Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501; Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854; Meyer v. Hartford Bros. Gravel Co., 144 Neb. 808, 14 N. W. 2d 660; Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643.

Or, as stated in Meyer v. Hartford Bros. Gravel Co., *supra*: "A driver of a vehicle about to enter a highway protected by stop signs must stop as directed, look in both directions and permit all vehicles to pass which are at such a distance and traveling at such a speed that it would be obviously dangerous for him to proceed across the intersection. See Schrage v. Miller, 123 Neb. 266, 242 N. W. 649."

And, as stated in Styskal v. Brickey, *supra*: "Bearing in mind that Railroad Avenue is a state highway carrying U. S. Highways Nos. 73 and 75 it would ordinarily, because of the stop sign, be the duty of any driver of a vehicle approaching it to come to a full stop as near the curb line as possible before driving onto it and give the right-of-way to vehicles upon the highway until such

time, after stopping, as he could drive onto the highway without interfering with the traffic thereon. See §§ 39-724 and 39-754, R. R. S. 1943." See, also, Schrage v. Miller, 123 Neb. 266, 242 N. W. 649.

And in Dorn v. Sturges, *supra*, we quoted the following from 5 Am. Jur., Automobiles, § 303, p. 668, with approval: "* * * it is his duty to look both to right and left; and if a vehicle is approaching on the main or arterial highway, it is his duty to wait until such vehicle has passed, unless a prudent person would have reasonable ground to believe that such other vehicle proceeding at a lawful speed is so far distant from the intersection that he could safely cross in advance thereof." See, also, Borcherding v. Eklund, *supra*.

As stated in Borcherding v. Eklund, *supra*:

" '* * * Where a motorist on a nonfavored street stops at an intersecting arterial highway when the intersection is clear of traffic, looks to the right and left for approaching vehicles, acting as a reasonably prudent person in the exercise of due care would act in the belief that he has time and opportunity to safely cross, he is not liable for negligence merely because he attempts to do so.' McCulley v. Anderson, 119 Neb. 105, 227 N. W. 321."

"Upon properly complying with the foregoing duties the driver, upon entering the intersection, does not have an absolute right-of-way which permits him to proceed without looking but must continue to maintain a proper lookout for the safety of himself and others traveling upon the streets."

"Where the driver of a car approaching a through street or highway stops and looks and sees an approaching vehicle on the favored street or highway but erroneously judges its speed or distance or for some other reason assumes he can proceed with safety and not have a collision, the question of whether or not his conduct in doing so makes him guilty of contributory negligence is usually one for the jury."

As to the duties of appellee, who was traveling on the through highway, the following are applicable:

"An automobile driver should have his car under such control that upon entering an intersection he can avoid a collision with another car which is operated with due care." Woracek v. Schuehart, 130 Neb. 260, 264 N. W. 670.

" 'A person traveling a favored street protected by a traffic signal, of which he has knowledge, may properly assume that oncoming traffic will obey it.' Angstadt v. Coleman, 156 Neb. 850, 58 N. W. 2d 507." Styskal v. Brickey, *supra*. See, also, Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766.

"A user of the highways may assume, unless and until he has warning, notice, or knowledge to the contrary, that other users of the highways will use them in a lawful manner, and until he has such warning, notice, or knowledge, he is entitled to govern his actions in accordance with such assumption." Angstadt v. Coleman, 156 Neb. 850, 58 N. W. 2d 507.

" 'The right of way established by municipal ordinance in favor of vehicles using certain streets is not an exclusive privilege, and it must be exercised with due regard to the right of other vehicles to use the intersecting streets.' Vance v. Poree, 5 La. App. 109." McCulley v. Anderson, 119 Neb. 105, 227 N. W. 321.

"The right of a motorist on an arterial highway to assume that a motor-cycle (here car) on a nonfavored intersecting street will be brought to a stop before entering the intersection does not permit him to * * * claim the right of way when too far from the intersection to be entitled thereto." McCulley v. Anderson, *supra*.

Since some of the quotes refer to streets instead of highways we call attention to the fact that: "The duties and obligations which attend a motorist when he approaches a stop sign erected pursuant to city ordinance are the same as those which attend when he approaches

one erected pursuant to statute or statutory rules of the road." Borcherding v. Eklund, *supra.*

From the evidence a jury could have found that appellee, as she approached the Avery intersection, noticed the dump truck parked to the west of the highway in front of the Avery Bar; that, because of the dump truck, she could not see to the west; that as the front of her car approached within a few feet of the rear end of the parked dump truck she, for the first time, saw appellant's car coming from the west on Avery Road and approaching and entering onto Highway No. 131 and into the intersection; that she was then traveling between 30 and 35 miles an hour; that she immediately put on her brakes and skidded her tires up to the point of impact, a distance of 46 feet; and that she attempted to turn her car to the left but was not able to do so sufficiently to avoid the accident. On the other hand the jury could have found that appellant stopped his car at the stop sign, some 24 feet from the west edge of the paved surfaced of Highway No. 131; that he was driving east on the south part of the driving surface of Avery Road; that he then proceeded, without stopping again, into the intersection and onto the paved highway some 4 to 6 feet, having started to turn to the south, when the impact occurred; that, as he approached the highway, he looked both to the north and south, but did not have a good clear view to the north because of the parked dump truck; that he was just entering onto the pavement when he first saw appellee's car coming from the north as it was passing the truck; and that his car proceeded into and against the side of appellee's car. What happened to the cars, after the impact, has already been related.

Under this situation we think the following, quoted from Bohnen v. Gorr, 234 Minn. 71, 47 N. W. 2d 459, has particular application to appellant's driving under the circumstances here shown: "A stop sign is intended to warn motorists of the presence of a through or arterial

highway. Our statute requires the driver of a vehicle approaching a through highway to stop at the entrance to such highway. Stop signs are usually erected some distance from the entrance to the through highway in order to afford approaching motorists an opportunity to stop before they reach the highway. Where the view of a highway is obstructed at the point where a stop sign is erected, it may not be sufficient to stop where the sign is erected in order to comply with the statute requiring a motorist to stop at the entrance to the highway."

Considering all of the factors involved we think it presents a jury question both as to whether or not appellant was negligent and also whether or not appellee was contributorily negligent and, if so, the degree thereof as it might affect her right to recover.

We come then to the other question raised by appellant. It is, was the verdict of $5,000 so excessive that it can be said it must have been rendered due to passion and prejudice? We have often announced the rule applicable but of course the ultimate answer to the question must always be one of fact. As stated in Dunn v. Safeway Cabs, Inc., 156 Neb. 554, 57 N. W. 2d 75: "When it appears from the record that the verdict in a case is so clearly exorbitant or excessive as to indicate that it was the result of passion, prejudice, or mistake, or some means not apparent in the record, or it is clear that the jury disregarded the evidence or rules of law, then it is the duty and power of the trial court and of this court to set aside a verdict for damages so large that it does not find support in the evidence."

But, as stated in Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236: "In an action sounding in damages merely where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere."

And in Sutton v. Inland Construction Co., 144 Neb.

721, 14 N. W. 2d 387, we said: "No method of exact computation can be devised in determining compensatory damages in cases of this kind. We think the evidence was such that the jury could properly arrive at the amount determined upon by them. We can find no yardstick whereby we can say as a matter of law that the verdict was excessive. Under such circumstances this court may not substitute its judgment for that of the jury, even if it be assumed that this court would determine that a lessor amount would constitute adequate compensation for the injuries sustained."

As has already been stated herein, appellee was thrown out of her car by the impact. She was found in an unconscious condition on the ground underneath the back end of her car where it came to a stop. She received numerous bruises and some abrasions to various parts of her body, particularly the right side of her head and the lower part of her back. She was taken to the Offutt Air Base Hospital in an ambulance and there examined. Her scratches and bruises were medically treated. She remained at the hospital about an hour for that purpose. The blow on the right side of her head and to her lower back had apparently been the most severe as they resulted in her having very severe headaches and acute pains in the lower back area. Some 2 or 3 days after the accident appellee went to Dr. Longo, her family doctor. He suggested she take hot baths, remain quiet, and not overdo. Within the next 2 weeks she went back to the Offutt Air Base Hospital on three different occasions, at which time X-rays were taken of her back. On two of these visits she consulted with Dr. Harris B. Graves, a member of the hospital staff. Dr. Graves concluded, from an examination of one of the X-rays taken, that appellee had suffered a minor fracture of the second lumbar vertebra which he described as the transverse process thereof. He testified that fact indicated considerable force had been applied to the lower back area. He also testified that it would probably heal without

treatment in 12 to 14 weeks and might even do so within a month. He testified appellee complained to him of very severe pains in her lower back so he directed that heat be applied thereto and that she rest, prescribing that certain sedatives should be taken to relieve these pains so that she would be able to relax. On June 24, 1955, appellee went to Dr. Joseph F. Gross, an orthopedic specialist, who gave her a complete examination. From this examination and her history of the injuries she suffered in the accident, he diagnosed her condition as an acute lumbar strain which he thought should improve with time but was then causing her quite a bit of difficulty. She had told Dr. Gross of the pain in her back and lumbar area, which she described as more or less constant and the severity of which depended upon how much activity she engaged in.

Appellee, who was 33 years of age at the time, testified she had been working regularly all winter, up until the time of the accident; that in the accident she suffered a severe bruise behind her right ear which caused her to have very severe headaches for about 2 weeks; that she has suffered severe backaches since the accident, primarily in the lower lumbar region; that she can now do the normal household work for her family, her husband being in Japan, but if in doing so she overdoes or works too long, the pain in her back gets so severe she has to go to bed; that she will also get these severe backaches if she stays on her feet too long; that she still treats herself with hot baths; that she was not able to return to her job as waitress at the Hill Hotel, where she was earning $130 a month; and that she has only worked one afternoon as a waitress and three evenings at a soda fountain since the accident and up to the time of trial, which was on January 25 and 26, 1956, or about 8 months thereafter. The evidence also shows the damage to appellee's car was $430.69 and that she had medical expenses of $38, there being none for her care and treatment at the Offutt Air Base Hospital because her hus-

band is in the service. We think, if the foregoing was believed by the jury, the verdict is not excessive. It is true that appellant produced evidence to the contrary, particularly that of Dr. Frank J. Iwersen who examined appellee on September 21, 1955, and said he found she was then completely normal and had made a complete recovery, but the jury was not required to believe what he testified to.

We have come to the conclusion that the contentions of appellant are without merit and therefore affirm the order of the lower court denying him a new trial.

AFFIRMED.