BARBARA BEZDEK, APPELLEE, V. KENNETH PATRICK, APPELLANT.

82 N. W. 2d 583

Filed April 19, 1957. No. 34113.

*Crawford, Garvey, Comstock & Nye,* for appellant.

*Matthews, Kelley & Delehant* and *Martin A. Cannon, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Barbara Bezdek as plaintiff in the district court for Douglas County to

recover damages for personal injuries sustained by her by virtue of a collision between an automobile driven by her husband, Joe Bezdek, in which she was riding as a passenger, and a truck being driven by Kenneth Patrick, defendant. The case was tried to a jury resulting in a verdict in favor of the plaintiff in the amount of $10,000. The defendant filed a motion for new trial and a motion for judgment notwithstanding the verdict. These motions were overruled by the trial court. From the overruling of the same, the defendant appeals.

The plaintiff, in her petition, charged the defendant with negligence which she claims directly and proximately caused the accident resulting in the injuries she sustained. The negligence charged is as follows: In failing and neglecting to keep a proper lookout for other vehicular traffic and in particular for the vehicle in which the plaintiff was riding; in failing to keep his truck under proper control; in failing and neglecting to grant the right-of-way to plaintiff's driver; in driving his truck at a high, dangerous, negligent, and unlawful rate of speed under the circumstances, to wit 60 miles an hour; and in failing to apply the brakes on his truck in time to avoid a collision when he had ample opportunity to do so.

The defendant's answer alleged that the sole and proximate cause of the collision and the injuries resulting therefrom to the plaintiff, if any, was the negligence of the driver of the car in which the plaintiff was riding immediately before and at the time of the collison.

For convenience we will refer to the parties as designated in the district court, to the car the plaintiff was riding in as the Bezdek car, and on occasion to the parties by their given names.

The record discloses that L Street is a through street and State Highway No. 275 at the place where the collision occurred. As L Street extends west from the boundary of Sixtieth Street at the intersection it is a two-lane highway 20 feet wide, and proceeding east

from the west boundary of Sixtieth Street it is a four-lane highway 42 feet wide. As L Street extends east from the intersection it has a grade of approximately 6.6 percent. West of the intersection it has a gradual decline ranging from a grade of 5.6 to 4.7 percent, and then flattens out as it proceeds west. In approaching this intersection from the west there is a sign stating: "Reduced Speed Zone Congested Area," up to which point the usual speed rates prevail, that is, 60 miles an hour in daylight, which would be in effect at the time this accident happened. Continuing east toward the intersection there is a sign indicating the speed limit to be 45 miles an hour.

Sixtieth Street is a two-lane street north and south of the intersection 18 feet wide, with a slight slope in both directions. There is a stop sign facing southbound traffic on the west side of Sixtieth Street 44 feet north of the edge of the paving on L Street. On the northwest corner of the intersection is a filling station referred to in the evidence as Tex's Service Station, which is of concrete block construction.

Joe Bezdek testified that he owned a two-door Studebaker automobile. On Sunday, August 1, 1954, which was a nice day, he and his wife Barbara drove to the Bohemian National Cemetery. Barbara was sitting to his right in the front seat of the automobile being driven by this witness. After leaving the cemetery they arrived at Sixtieth Street and proceeded south. He stopped the car about 2 feet to the north of the stop sign. The service station to his right obstructed his view to the west. He put his car in low gear and proceeded about 10 feet to the south of the stop sign. Looking to the west, he saw a truck about 300 feet away proceeding east on L Street. He started to step on the gas and thought he had plenty of time to cross the intersection as he was going to proceed straight south on Sixtieth Street. His car did not pick up speed. He continued to watch the truck and it continued on east without slowing

down or stopping but maintaining a rate of speed which he estimated to be 60 miles an hour. His car was in the intersection when the truck struck it on the right side with its left bumper, behind the right front wheel. The collision occurred in the intersection. He testified that he did not know what happened after the impact. He fell out of the car, slid on the cement on his hands and face, and became unconscious. He was lying in the street on his face, he thought, about 20 feet from where the accident occurred. He regained consciousness in a short time and saw his wife sitting up on the pavement about 20 feet from him. Later he saw a patrolman and some ladies from the service station who helped him and his wife. They were taken to the County Hospital. He further testified that as the truck came toward him, he stepped on the brake. He kept looking at the truck, and thought the driver of the truck would reduce its speed or stop, but he did not. The witness was proceeding across the intersection at a speed of from 7 to 10 miles an hour. He had been over Sixtieth Street once that day and apparently only once on a prior occasion. He thought there was a stop sign on L Street and that the truck would have to stop. The front of his car was beyond the north curbline of L Street. He at no time saw any car ahead of him. He watched the truck right up to the time of the collision. The accident occurred at approximately 5 p.m.

Joe Bezdek, Jr., testified that a day or so after the accident occurred he went to the scene, and that there was a square white sign 250 feet from the edge of the intersection along L Street stating the speed limit of 60 miles an hour by day and 50 miles an hour by night. A distance of 250 feet from this sign there was a bridge.

Barbara Bezdek testified that at the time of the accident she was 59 years old. As they drove up to the intersection of Sixtieth and L Streets, there was a stop sign, and her husband stopped the car. The service station to her right blocked her view to the west. She

looked both to the east and to the west, then Joe started the car, and when it was a few feet south of the stop sign she looked to the west and saw a big truck. She could not tell how far it was away from them, but it was between the big white sign and the bridge. She did not know what happened when the truck collided with their car.

The defendant, Kenneth Patrick, testified that he owned a 1952 model Ford truck. It was about 8 feet wide and 25 feet in length, equipped with what he called a "grain box." The weight of the truck was about 11,000 pounds. At the time of the collision he had 14 head of cattle in the truck. They weighed approximately 10,000 pounds. The truck was equipped with four speeds forward. He operated his own truck, and had for 15 years, primarily to haul livestock to the market in South Omaha. He lived at Genoa, and averaged about three trips a week to Omaha. On Sunday, August 1, 1954, he was hauling cattle to Omaha. He left Genoa at approximately 1 p.m., and got onto State Highway No. 275 at Fremont, the route he always took to South Omaha. He drove at a speed not in excess of 45 miles an hour. He further testified that Joe Pencak, the owner of the cattle he was transporting to market, was riding with him. He was familiar with the intersection of Sixtieth and L Streets, and there was no stop sign as you approach Sixtieth Street from the west on L Street. When he was proceeding east on L Street and approximately 75 to 100 feet from the intersection, a car came from the north and turned east on L Street. He was driving his truck on the right, or south traffic lane and had entered the intersection with the front wheels of his truck about even with the center line of the intersection when the impact took place. The instant he saw the Bezdek car, he attempted to bring the truck to a stop and endeavored to avoid an accident. He applied the brakes, swerved the truck to the right, or south, and about that time the Bezdek car and his truck collided.

The left front fender of the truck was alongside the right front wheel of the Bezdek car. It appeared to the defendant that Bezdek was attempting to make a turn to the left or east. He applied the brakes about the time the Bezdek car and his truck collided. The impact and the setting of the brakes threw the cattle against the front of the truck box with the result that glass broke and flew into the cab, and about all he could do at that time was straighten the truck up, release the brakes, and let the truck come to a stop. He testified that he went about 200 feet before the truck came to a stop. The Bezdek car glanced off to the north side of the highway. He stayed with the truck, and was able to drive it home. He maintained a rate of speed of 40 miles an hour at the time he entered the intersection, and generally drove at a speed of 45 miles an hour.

On cross-examination he testified that the hill on L Street starts going up before arriving at Sixtieth Street, and is a steep hill; that a driver going south on Sixtieth Street would have his view to the west impaired by the service station; and that he knew that traffic could be coming out from behind the service station. He noticed the sign "Congested Area, Reduce Speed." When he reached the sign, he was proceeding at 40 miles an hour. He did not slow down as he passed the sign, nor until the time of the impact. He was just in the intersection when he saw the Bezdek car, but did not say how far into the intersection. He saw the Bezdek car just an instant before the impact, and at that time the Bezdek car and his truck were practically together. He believed there were no trees or shrubs outside the service station. He did not know exactly where the Bezdek car and his truck came together.

A Nebraska safety patrolman arrived at the scene of the accident just prior to 5:20 p.m. He testified that it was cloudy, the ground was dry, and there was daylight visibility. He observed cars at the scene of the accident, one the Bezdek car and the other the defendant's truck.

The marshal of the village of Ralston and this patrolman took some measurements. The right side of the Bezdek car was 53 feet east and 11 feet 5 inches north of the center of the intersection. The rear end of the Bezdek car pointed west. With reference to the defendant's truck, it was 207 feet east of the center of the intersection, and the right side of the truck was 11 feet 7 inches north of the south edge of L Street. In the intersection he found debris and dirt 7 feet 5 inches south and 3 feet 3 inches west of the center of the intersection. When he arrived at the scene of the accident, Mr. and Mrs. Bezdek were lying on the ground in the vicinity of the intersection.

On cross-examination he testified that west of Sixtieth Street on L Street there was a 45-mile-an-hour speed sign; and that the speed would be 60 miles an hour by day and 50 miles an hour by night west of that area. The stop sign facing L Street north on Sixtieth Street is for southbound traffic and is in front of the Tex's Service Station. As a practical matter, one approaching that stop sign and stopping even with it and looking to the west would be looking into the service station. A person would have to go beyond the service station before he could have a clear view to the west.

The defendant contends that the trial court committed reversible error in the following respects: (1) The trial court erred in including in its instruction No. 10 to the jury the following words: "but, having complied with the rule to stop at a point where he can reasonably see," for the reason that there is no evidence in the record to support such statement; (2) the trial court erred in including in allegation No. 3 of its instruction No. 1 to the jury the following words: "In failing to grant the right-of-way to the plaintiff," for the reason that there is no evidence in the record to support the implication that the plaintiff had the right-of-way; (3) the trial court erred in failing to sustain the defendant's motion for a directed verdict at the end of the plaintiff's

evidence, or at the end of all of the evidence; and (4) the trial court erred in failing to sustain the defendant's motion for new trial or, in the alternative, defendant's motion for judgment notwithstanding the verdict.

Before determining the assignments of error we call attention to the following rule which is applicable: "If a motion for a directed verdict is made at the close of the plaintiff's evidence and again at the close of all the evidence, or in the alternative to dismiss plaintiff's case, to test the sufficiency of the evidence to support a verdict, it must be considered in the light most favorable to the successful party, that is, every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be deduced therefrom." Dorn v. Sturges, 157 Neb. 491, 59 N. W. 2d 751. The same rule applies to a motion for judgment notwithstanding the verdict. Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367.

With reference to defendant's assignment of error No. 1, the defendant argues that Joe Bezdek, the driver of the car in which the plaintiff was riding, stopped 2 feet north of the stop sign on Sixtieth Street; that there was a filling station at the northwest corner of the intersection of Sixtieth and L Streets; that this stop sign was 10 feet north of the south line of the filling station and at that point where Joe Bezdek stopped his car he would be unable to see traffic on L Street approaching the intersection from the west; and that in emerging south from the stop sign Joe Bezdek, in driving his car, disregarded the traffic on the highway and under the circumstances the trial court's instruction was too broad and constituted reversible error.

Instruction No. 10 given by the trial court is as follows: "The statute requires one to come to a full stop as near the right-of-way line as possible before driving onto the state highway and to give the right-of-way to vehicles on such highway, regardless of direction, but does not require a driver to remain in that position until

the highway is entirely clear of traffic, but, having complied with the rule to stop at a point where he can reasonably see, if it appears to him in the exercise of ordinary care that any traffic is so far away and proceeding at such as (sic) speed that he could safely cross, he would not be negligent if he so proceeds and exercised ordinary care in doing so."

"A driver of a vehicle about to enter a highway protected by stop signs must stop as directed, look in both directions, and permit all vehicles to pass which are at such a distance and traveling at such a speed that it would be obviously dangerous for him to proceed across the intersection." Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643. See, also, Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501; Paddack v. Patrick, 163 Neb. 355, 79 N. W. 2d 701.

"The violation of traffic regulations concerning stop signs, speed, the manner of operating a motor vehicle on the highway, and the like is not negligence as a matter of law of any kind or degree, but it is a fact to be considered with the other evidence in the case in deciding an issue of negligence." Born v. Estate of Matzner, 159 Neb. 169, 65 N. W. 2d 593.

The record shows that Joe Bezdek, after arriving at the stop sign, put his car into low gear and proceeded at a speed of 7 to 10 miles an hour, and when about 10 or 11 feet south of the stop sign he looked to the west and saw the defendant's truck at a distance of 300 feet proceeding east toward the intersection. At that time the Bezdek car was approximately 34 feet from the north edge of the intersection, the stop sign being approximately 44 feet from the north edge of the intersection. He thought that he had plenty of time to cross the intersection to proceed directly south on Sixtieth Street. He stepped on the accelerator, but the car did not pick up speed. He continued to watch the defendant's truck which did not slow down or stop, but maintained the same speed as at the time he first saw it. The defend-

ant's truck struck the right side of the Bezdek car and the right front wheel. The defendant testified that he did not observe the Bezdek car until just an instant before the collision occurred.

As said in Borcherding v. Eklund, *supra*: "Where the driver of a car approaching a through street or highway stops and looks and sees an approaching vehicle on the favored street or highway but erroneously judges its speed or distance or for some other reason assumes he can proceed with safety and not have a collision, the question of whether or not his conduct in doing so makes him guilty of contributory negligence is usually one for the jury." See, also, Paddack v. Patrick, *supra*.

We find no merit to the first assignment of error.

With reference to the defendant's second assignment of error, the defendant states that it was stipulated that the defendant was traveling on State Highway No. 275. Defendant argues that a stop sign faced traffic for a driver proceeding south on Sixtieth Street before entering the intersection; and that negligence of the plaintiff's driver was the direct and proximate cause of the collision and, this being true, no recovery could be had in favor of the plaintiff. In addition, the defendant argues that Joe Bezdek thought, or believed, there was a stop sign on L Street which would require the defendant driver to stop his truck before entering the intersection. Therefore, in connection with the argument as previously set out, there could be no recovery in behalf of the plaintiff.

We believe the following to be applicable: "A motorist entering an intersection from the right is in a favored position and has the right-of-way, other things being equal, but such fact does not do away with the duty of the driver of the favored car to exercise ordinary care to avoid an accident." Evans v. Messick, 158 Neb. 485, 63 N. W. 2d 491.

"A person traveling a favored street protected by a

stop sign, of which he has knowledge, may properly assume that oncoming traffic will obey it.

"A user of the highways may assume, unless and until he has warning, notice, or knowledge to the contrary, that other users of the highways will use them in a lawful manner, and until he has such warning, notice, or knowledge, he is entitled to govern his actions in accordance with such assumption." Angstadt v. Coleman, 156 Neb. 850, 58 N. W. 2d 507. See, also, Paddack v. Patrick, *supra*.

"An automobile driver should have his car under such control that upon entering an intersection he can avoid a collision with another car which is operated with due care." Woracek v. Schuehart, 130 Neb. 260, 264 N. W. 670.

"The right of a motorist on an arterial highway to assume that a motor-cycle (here, a car) on a non-favored intersecting street will be brought to a stop before entering the intersection does not permit him to * * * claim the right of way when too far from the intersection to be entitled thereto." McCulley v. Anderson, 119 Neb. 105, 227 N. W. 321.

We believe, as shown by the evidence and the foregoing authorities, that the negligence of the driver of the car in which the plaintiff was riding and the negligence of the defendant were questions for the jury to determine.

As to the instructions complained of, the following is applicable.

Instructions should be considered together in order that they may be properly understood, and when, as an entire charge, they properly submit the issues to the jury, the verdict will not be set aside. If an examination of all the instructions given by the trial court discloses that they fairly and correctly state the law applicable under the evidence, error cannot be predicated thereon. See, Blanchard v. Lawson, 148 Neb. 299, 27 N. W. 2d 217; Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293;

Griess v. Borchers, 161 Neb. 217, 72 N. W. 2d 820.

The defendant's second assignment of error cannot be sustained.

The defendant contends that the verdict is excessive and that the only element of damage was pain and suffering.

The record discloses that after the accident occurred both the plaintiff and her husband were taken to the County Hospital in an ambulance, where they were placed in separate rooms. After a few hours they were removed to their home and the plaintiff went to bed. She testified that she was confined to bed for 12 or 13 weeks; that during that time she suffered great pain and anguish; that her right leg was badly swollen as well as her right ankle; and that she was unable to do any of her housework.

A niece of the plaintiff testified that she and her husband went to the hospital and took the plaintiff home on August 1, 1954; that she stayed with her, alternating with the plaintiff's son and his wife, both day and night for a period of approximately 5 or 6 weeks; and that they applied hot and cold packs to the plaintiff's injuries. During all of that time the plaintiff was confined to her bed. After that time, neighbors took over and cared for the plaintiff. The plaintiff's right leg was swollen, and at times the swelling would increase. During the time this witness was there, the plaintiff was unable to get out of bed for any purpose.

It also appears from the record that Dr. Christlieb attended the plaintiff immediately after the accident for a short period of time, since her regular physician was on vacation. Upon his return, Dr. Srb saw the plaintiff at her home. He testified that he treated the plaintiff for the injuries she received in the accident of August 1, 1954; and that she had a contusion of her whole right leg which was black and blue in places. He found no fracture, nor was there any fracture at any time. She was put to bed and ordered to stay there. She

remained in bed for several weeks. He described her condition as being a serious ecchymosis, with bruises and blood clots up and down her right leg, above her ankle. On August 27, 1954, he opened a hematoma, which is a blood tumor where the blood, having escaped from veins or arteries, coagulates in the tissues causing pain. To relieve the pain, he performed this operation. On September 21, 1954, he incised another hematoma to give her relief from pain. He continued to see her and treat her until the time of trial. She had an edema of her ankle, which is a swelling, disclosing interference with the circulation. He examined her shortly before the trial and testified that if she remained in bed the swelling would lessen or go down. In a normal case of this type, the swelling would go down in a year or less, but in this particular case the swelling was still present and it had been more than a year since the accident. He did not feel that the swelling would leave or that there would be any change in her condition from that time on. On cross-examination he testified to the various times he saw and treated the plaintiff; that she was not carried into his office, but walked; and that at the time of trial she had a swelling of her right ankle.

A doctor who made an examination of the plaintiff just prior to the trial testified that in the plaintiff's right leg there was a disturbance in the return circulation, or in the circulation proper, which enlarged and dilated the veins and created a swelling around her ankle; that the fluid elements of the blood get into the tissues by increased pressure in the smaller blood vessels; that such damage often results from trauma such as a blow; and that the injury the plaintiff had at that time was permanent. In his opinion, considering the time that had elapsed after the accident and the disability still present, the injury would remain as it was, and constitute a permanent injury.

The defendant's doctor, who examined the plaintiff thoroughly, testified that she was normal in all respects

except that her right leg exhibited a grade 2 edema. Grade 1 would be the lowest, and grade 4 the most serious. She walked with a peculiar gait. The doctor concluded that from the history it would be right to presume that the injury to the right lower extremity produced an acute thrombophlebitis. As a result, she had a chronic edema of the right lower extremity resulting from a venous or lymphatic obstruction, or both.

"A verdict may be set aside as excessive only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or controlling rules of law." Remmenga v. Selk, 152 Neb. 625, 42 N. W. 2d 186.

" 'The question of the amount of damage is one solely for the jury and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of injury and damage proved.' " Bresley v. O'Connor Inc., 163 Neb. 565, 80 N. W. 2d 711. See, also, Peacock v. J. L. Brandeis & Sons, 157 Neb. 514, 60 N. W. 2d 643; Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627.

"The verdict of a jury, based on conflicting evidence, will not be disturbed unless clearly wrong." Griess v. Borchers, *supra*. See also, Granger v. Byrne, *supra*.

We find that the verdict and judgment were sustained by competent evidence and that there was no error in the record prejudicial to the rights of the defendant, therefore, the judgment of the trial court should be, and is hereby, affirmed.

AFFIRMED.