INSURANCE COMPANY OF PUERTO RICO and MUNICIPALITY OF BAYAMÓN, Plaintiffs and Appellants, *v.* SALVADOR RUIZ MORALES, Defendant and Appellee.

No. O-67-10.        Decided June 6, 1968.

*Castro & Castro* for appellants. *Rafael S. Fuentes Rivera* and *José Pérez Rodríguez* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

This appeal involves the usual questions concerning liability and the amount for damages as a result of a collision between two motor vehicles, at an intersection of streets. The evidence concerning the liability was conflicting. We do not

find any showing in the record to disturb the weighing of the evidence made by the trial court in concluding that "the Municipality of Bayamón, plaintiff herein and against whom a counterclaim had been asserted, was guilty of 85% of the negligence and the counterclaimant was guilty of 15% of the negligence in the occurrence of this accident." Neither do we find any reason to alter the amount of the damages.

The circumstances and facts of this case are analyzed below.

The Municipality of Bayamón and its insurer, Insurance Company of Puerto Rico, filed an action for damages amounting to $1,827.20 in the District Court, Bayamón Part, against Salvador Ruiz Morales, who in answering the complaint included a counterclaim. The coplaintiffs replied with a motion to dismiss the counterclaim.

The District Court rendered judgment sustaining the counterclaim and dismissing the complaint, ordering the plaintiffs, against whom the counterclaim was pleaded, to pay jointly to Ruiz Morales, counterclaimant, the following amounts:

$7,326 for physical and mental suffering
   400 for damages to his automobile
   280 loss of income
   100 medical expenses
    20 medicines
   700 attorney's fees

The total amount of the compensation is $8,826 to be paid jointly by the counterclaimed plaintiffs, but as to the Insurance Company of Puerto Rico, within the limits of its policy of $5,000.

Appeal from this judgment was taken to the Superior Court, Bayamón Part. The Superior Court dismissed the counterclaim against the Municipality of Bayamón, but affirmed the judgment against the Insurance Company of Puerto Rico, in the total amount of $7,976.41, after deducting

$131.59, which is the amount equivalent to 15% of the damages suffered by plaintiff, Municipality of Bayamón, for the concurrent negligence of defendant-counterclaimant. The Superior Court concluded that the compensation for physical and mental suffering awarded by the District Court was not excessive.

Insurance Company of Puerto Rico filed a motion for reconsideration before the Superior Court, requesting that the judgment be amended in the sense of reducing it to the total amount of the insurance policy, as it had been done by the District Court. On January 4, 1967 the Superior Court entered an order modifying said judgment *"for the purpose of reducing the amount awarded as compensation for physical and mental suffering, to $4,218*; so that the total compensation awarded be adjusted to the amount of the policy on which the obligation of the counterclaimed plaintiffs is based." (Italics ours.)

Both, the Insurance Company of Puerto Rico, plaintiff and counterclaimed party herein, and Salvador Ruiz Morales, defendant and counterclaimant, moved for the issuance of a writ of certiorari to review the judgment of the Superior Court. On May 1, 1967 this Court entered an order consolidating the two petitions for certiorari, since they both seek to review the same judgment, for the further prosecution of the case and its decision. Today we dispose of both petitions by separate opinions.

On July 14, 1964, at the intersection of Nogal Street and Laurel Avenue of Lomas Verdes Development, in Bayamón, an automobile accident occurred between a Dodge station wagon, property of the Municipality of Bayamón and driven by Ángel R. Atanacio Hernández, in official business of his employment, and a Chrysler automobile belonging to and driven by Salvador Ruiz Morales.

The Superior Court concluded that there was no ground to disturb the weighing of the evidence made by the District

162

Court as to the manner in which the accident occurred. The trial court gave the following description on this aspect.

"The aforementioned accident occurred in the following manner:

While the defendant-counterclaimant, Salvador Ruiz Morales, was driving his automobile, previously described, along Laurel Avenue from south to north, at a speed of approximately 30 to 35 miles per hour, he was suddenly intercepted by the afore-described vehicle property of the Municipality of Bayamón and driven at that time by Angel R. Atanacio Hernández, who was driving said automobile along Nogal Street, on a west-east-wardly direction, there being at the entrance of said intersection at the time of the accident, a 'STOP' sign which he disregarded, intercepting in such a manner the flow of traffic along which the defendant-counterclaimant was travelling in his automobile, so that the Dodge vehicle was hit by the Chrysler on the right rear tire with the front of the Chrysler causing damages . . . and with the impact the Dodge vehicle collided against a fence which is in the second corner of the intersection between Laurel Avenue and Nogal Street and stopped there. . . . Besides not stopping, the Dodge vehicle which was travelling along Nogal Street, on which there is less traffic, towards Laurel Avenue, was running at an excessive speed, and besides not stopping at the 'STOP' sign and running at an excessive speed and going along the thoroughfare of less traffic, when he noticed the presence of the Chrysler vehicle, he accelerated his speed in such a manner that he was unavoidably hit by the Chrysler vehicle."

As to the injuries suffered by appellee, the trial court concluded that:

"As a result of the accident, Salvador Ruiz Morales suffered a comminuted open fracture of the left patella; the bone was broken into small pieces, an operation having been performed on the wound to avoid infection. A second operation with respect to the fracture itself was performed, for which reason it was necessary to make an incision of about ten inches long in 'U' form in the lower part of the knee. After the wound was sutured and adequate treatment given, a cast was applied. On July 31, 1964 a patellectomy was performed and a cast was applied again;

which was removed on September 1, 1964. He was treated, among others, by Doctors José Antonio Santa, resident physician of Hospital Universitario, and Juan Llompart, specialist in orthopedic surgery and fractures. The wound has healed superficially, although he has two (2) scars, a large one in 'U' form of about ten inches long, and a small one; undoubtedly they are of a permanent nature. His left leg is swollen from the ankle to the distal part of the leg, the function of the knee being altered in view of the operation of the patella as a result of the fracture received in the aforementioned accident. He has permanent disability of the movements of his left leg of a minimum of 25 to 30% of a permanent nature (it is thus inferred from the medical evidence, inclusively from the testimony given by Dr. Juan Llompart, brought by the counterclaimed plaintiffs as rebutting evidence). There is also muscular atrophy which affects the function of said knee, as a result of the entire removal of the patella. Salvador Ruiz Morales was also treated on three or four occasions by Doctors Pujadas, to whom he paid $40 for their services, and he spent about $20 in medicines, and by Dr. Carranza, who saw him seven or eight times, to whom he paid $60 for professional fees.

That as a result of the accident, Ruiz was absent from work, where he earned a wage of $70 weekly, during four months, but his employer continued paying him said wage."

The District Court ruled, in addition, that:

"A serene analysis of the foregoing facts leads us to the conclusion of law that the counterclaimed plaintiff committed 85% of the negligence and that the defendant-counterclaimant incurred 15% of the negligence in the occurrence of this accident, and thus, in rendering the judgment which will be rendered hereinafter dismissing this complaint and sustaining the counterclaim, it is expressly stated that the percentage of the degree of negligence of both parties has been taken into consideration in fixing the amounts in said judgment. That is to say, that upon determining that both parties were negligent in the degree aforementioned, this Judge, in rendering judgment in the afore-stated manner, has determined the degree of guilt attributable to both parties when fixing the compensation which will be fixed hereinafter, and said amount has been fixed after

having made the corresponding deduction of the contributory negligence of the defendant-counterclaimant. *Serrano* v. *Lugo*, 83 P.R.R. 290."

Appeal from the judgment of the District Court having been brought to the Superior Court, the latter affirmed the former's judgment, except that it determined that:

". . . the District Court should have deducted from the amount awarded, an amount equivalent to 15% of the damages suffered by plaintiff, the Municipality of Bayamón, as a result of the same degree of negligence incurred by the defendant-counterclaimant-driver. This circumstance should entail a deduction of $131.59 in the amount awarded to the defendant as general compensation for damages.

".    .    .    .    .    .    .    .

"However, the Court of First Instance committed the seventh error assigned in sustaining the counterclaim against the Municipality of Bayamón and in ordering said entity to pay for the damages as compensable. The record of the case shows that the defendant did not comply with the jurisdictional requirement provided in § 96 of the Municipal Law. 21 L.P.R.A. 1603. And this fact should call for the dismissal of the action against the municipality. *García* v. *Northern Assurance*, 1965, Bar Asso. 74 [92 P.R.R. 236]; *Cuchi Coll* v. *Government of the Capital*, 87 P.R.R. 1966 [*sic*];* *Mangual* v. *Superior Court*, 1963, Bar Asso. 122. (88 P.R.R. 475.)

"In view of the circumstances set forth, the judgment rendered in this case is modified in the following manner:

"(1) The counterclaim concerning coplaintiff, Municipality of Bayamón, is dismissed.

"(2) The plaintiff, Insurance Co. of P.R., is ordered to pay defendant-counterclaimant the sum of $7,194.41, as compensation for physical and mental suffering; the amount of $400 corresponding to the loss of defendant's automobile; the amount of $280 for loss of income, plus the sum of $102 for medical expenses and medicines.

"The appellant insurance company shall pay costs and $700 for attorney's fees."

---

* 93 P.R.R. 715.

The judgment was subsequently amended in order to reduce the amount of compensation for physical and mental suffering "to the amount of $4,128, so that the total compensation awarded be adjusted to the amount of the policy on which the obligation of the counterclaimed plaintiffs is based."

The insurer alleges that the trial court erred (1) in concluding that the driver of the vehicle of the municipality was driving it along Nogal Street and not along Laurel Avenue in Lomas Verdes Development, and that the accident was due to his negligence; (2) in not ordering appellee Ruiz to pay appellant what the latter paid for the damages sustained by the municipality's vehicle; (3) in concluding that "the driver was guilty in 85% of the occurrence of the accident"; (4) in granting an excessive amount for damages; (5) in ordering appellant to pay to appellee Ruiz the sum of $700 for attorney's fees, and (6) in ordering the insurance company to pay damages in excess of the insurance policy issued by the appellant insurance company, and which covers Ruiz' claim.

1, 2, 3.—The circumstances of this case are very similar to those of *Negrón Pumarejo v. Calderón Sánchez*, 94 P.R.R. 188 (1967). In both cases the collision of the vehicles occurred at an intersection so that the vehicle which travelled along the street and entered the intersection, without stopping first, was the principal tort-feasor of the accident. In both cases the evidence was conflicting as to which of the vehicles travelled along the avenue and which along the street.

The driver of the Dodge station wagon, property of appellant municipality, Ángel Rafael Atanacio Hernández, testified that at the time of the accident he was driving said vehicle from Santa Juanita towards Lomas Verdes, along Laurel Avenue, going back to his office in Road No. 174 of Bayamón; that when entering the intersection of this avenue

with Nogal Street, a vehicle driven by Ruiz Morales emerged from the latter at about 50 or 60 miles per hour and collided with the left rear of his vehicle; that the station wagon whirled around thrice to the right and was thrust against the fence of a house at one of the corners of the intersection. On cross-examination he testified that he was coming out of Comerío Street where he went to take an employee to his residence from the Public Works Office of the municipality where both worked, that is in front of the office of the Water Resources Authority in Bayamón; that the distance to Lomas Verdes is nearer, going along some streets instead of reaching Laurel Avenue; that on other occasions, upon going towards Lomas Verdes, he has travelled along Nogal Street; that this is the shortest route to the office of the Water Resources Authority. He said that that day he did not take the shortest route because "Those short cut streets are more inconvenient because there are more intersections."

Roberto González, Hernández' friend, testified that he was at the intersection waiting for a public car to go to his work at a supermarket, when the accident occurred; that he saw the Dodge station wagon coming down Laurel Avenue of Santa Juanita in the direction of Lomas Verdes, and that the other vehicle was travelling along Nogal Street; that the latter did not stop before reaching the intersection and collided with the station wagon. On cross-examination he said that from the scene of the accident he went to his work, where he punched his time card. However, there was evidence that he was absent from work that day and on cross-examination he admitted having returned to his house nearby with Hernández, so that the latter would inform his office by phone what had happened. The policeman who carried out the investigation of the accident testified that Ruiz Morales admitted that he was travelling along Nogal Street from west to east, admission which the latter denied.

Ruiz Morales testified that he works in a terrazzo plant located in Road No. 174, Km. 5, going from Bayamón to Aguas Buenas; that from there he left to take some clothes to Baronet Laundry in Laurel Avenue in Lomas Verdes Development; that he went along Road No. 174 up to Minillas crossing, and there turned to the left and then to the left in the first block and continued straight along Laurel Avenue; he stopped at the laundry five minutes to deliver and pick up clothing; he saw the couple, owners of the laundry, there; from there he left along Laurel Avenue "proceeding downgrade to Road 174" for the purpose of returning to the plant. He testified that upon arriving at the intersection of Laurel Avenue and Nogal Street "I was driving at about 35 or 40 miles; then that guy [Hernández] was coming out in a red station wagon" (the Dodge station wagon of the municipality), and added:

"A.—And when one goes upgrade there is a STOP sign in the very corner and I thought that he was going to stop between the two intersections because he was coming so swiftly, and then what he did was to gain speed and I hit him in front with my car, I hit him with the rear of the tire, I hit him and threw him on a fence, but the fact is that he was coming with so much speed that I could not, I tried to stop the car but I could not, I hit him with the rear tire because he tried to pass me, I thought he was going to stop at the intersection. Then he attempted to pass me and I collided with him by the rear and threw him against the fence.

". . . . . . . .

"A. He did not do it [stop]. It seems that he thought of doing so in the middle of the avenue, it seems that since he saw me so near, he saw me and it seems that he thought that at the speed he was driving there was no time, then he accelerated more, that is why I reached him, if he had stopped at the intersection I would have had time to pass and nothing would have happened to him."

He testified that the front part of his vehicle collided with the right rear tire of the station wagon which collided

against a fence, turned around and remained facing in the opposite direction while his vehicle remained in the same position as before. He said that the first thing he did prior to the collision was to slow down to see whether the other vehicle passed; he applied the brakes to slow down but did not apply them to avoid the collision because if he had applied them the damages would have been greater.

The owner of the laundry corroborated Ruiz' testimony that the latter had been there some time before the accident coming and going along Laurel Avenue.

Acosta Amador, owner of a mechanic and tinsmith's shop, saw the collided station wagon at the municipality's garage. It had the left part quite dented, lightly dented on the right, the greatest damage being on the tire, since it was broken as if the vehicle had a broken pivot; that the impact on the right wheel must have been quite strong in order to break the axle. He testified that the vehicle showed the left part "quite dented," but he could not inform whether those damages "were caused by a fence with iron rods or whether it was a vehicle impact."

In the light of the foregoing summary, there is no ground to conclude that the court erred in concluding that Hernández was driving the station wagon along Nogal Street and that the collision was due in 85% to his negligence in not stopping before entering the aforesaid intersection, or that those findings "are clearly erroneous or that they are in conflict with the most reasonable, fair, and judicial weighing of the entire evidence received." *Negrón Pumarejo* v. *Calderón Sánchez, supra.* The evidence rather seeks to show that actually the one travelling along Nogal Street was Hernández in the station wagon in question, and that the accident was principally due to his negligence. The Vehicle and Traffic Law, 9 L.P.R.A. § 921; *Flores* v. *F. & J. M. Carrera, Inc.,* 83 P.R.R. 320 (1961); *Bezdek* v. *Patrick,* 103 N.W.2d 318

(Neb. 1960); *Paddack* v. *Patrick*, 79 N.W.2d 701 (Neb. 1956).

4.—The medical testimony amply supports the findings of the District Court on the damages suffered by Ruiz, as reduced by the Superior Court. *Santaella* v. *Licari*, 83 P.R.R. 855 (1961); *Baralt* v. *Báez*, 78 P.R.R. 115 (1955).

5.—The assignment as to the granting of attorney's fees has been submitted with the comment that "it depends on this Court's decision with respect to the other errors." This implies that since this Court does not sustain the foregoing assignments, the trial court did not err in granting the attorney's fees which appellant challenges. We so conclude.

6.—The assignment to the effect that damages were granted in excess of the limit provided by the insurance policy is untenable, since the Superior Court modified the judgment for the purpose of reducing the amount of the damages in conformance with the aforesaid limitation. Since the insurance company had extended to the municipality, within the same policy, a coverage for damages to the property up to $5,000, the former is severally liable, and in addition to the item for physical and mental suffering, for the $400 for damages to the vehicle and the $280 for loss of income.

Therefore, the judgment should be modified for the purpose of (1) reducing the insurance company's liability to the sum of $5,000, which is the limit of liability assumed by it according to the corresponding policy; and (2) that said insurance company be liable, moreover, for the $400 for damages to appellee's vehicle and for the $280 for loss of income.

As thus modified, the judgment rendered in this case by the Superior Court, Bayamón Part, will be affirmed.